# Illinois Official Reports

## Appellate Court

---

**_People v. Haines_, 2021 IL App (4th) 190612**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMAAL C. HAINES, Defendant-Appellant. |
| District & No. | Fourth District<br>No. 4-19-0612 |
| Filed<br>Modified upon<br>denial of rehearing | September 17, 2021<br><br>November 19, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 05-CF-1367; the Hon. James R. Coryell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Ross K. Holberg, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Scott Rueter, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE CAVANAGH delivered the judgment of the court, with opinion.
Justices Harris and Holder White concurred in the judgment and opinion.

# OPINION

¶ 1    Defendant, Jamaal C. Haines, is serving a total of 55 years' imprisonment for first degree murder (see 720 ILCS 5/9-1(a)(1) (West 2004)): 30 years (see 730 ILCS 5/5-8-1(a)(1) (West 2004)), plus 25 years as a firearm enhancement (see *id.* § 5-8-1(a)(1)(d)(iii)). He moved for permission to file a successive petition for postconviction relief, invoking *Miller v. Alabama*, 567 U.S. 460 (2012), and *People v. Harris*, 2018 IL 121932, both of which were issued after his initial postconviction proceeding. In his proposed successive petition, he claims that, since he was only 18 years old when he committed the murder, his *de facto* life sentence violates the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate-penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). The circuit court of Macon County denied him permission to file the successive petition. He appeals from the denial.

¶ 2    In our *de novo* review (see *People v. Moore*, 2020 IL App (4th) 190528, ¶ 15), we conclude that, for two reasons, the circuit court was correct to deny defendant permission to file his proposed successive petition for postconviction relief. First, *res judicata* bars the sentencing claim, which he already raised on direct appeal. Second, even if *res judicata* could be relaxed, defendant failed to show cause for leaving the sentencing claim out of his initial petition for postconviction relief. See 725 ILCS 5/122-1(f) (West 2018).

¶ 3    Therefore, we affirm the judgment, and we deny defendant's petition for rehearing.

## I. BACKGROUND

¶ 4

¶ 5    The evidence in the jury trial tended to show that on June 18, 2005, in Decatur, Illinois, when defendant was 18, he and a friend of his attempted to steal cannabis from the apartment of Christopher Foster. When his door got kicked in, Foster stood up from his couch, and defendant shot him point-blank in the head with a shotgun, killing him.

¶ 6    The jury found defendant guilty of first degree murder, and as we said, the circuit court imposed an aggregate sentence of 55 years' imprisonment. Defendant never filed a postsentencing motion, although, at the conclusion of the sentencing hearing, the court admonished him of the need to do so in order to preserve any sentencing issues for appeal.

¶ 7    Defendant took a direct appeal, in which his "only contention [was] that his sentence was excessive because the trial court failed to consider mitigating factors such as [his] youth, nonviolent criminal history, and drug addiction." *People v. Haines*, No. 4-06-0549 (2007) (unpublished order under Illinois Supreme Court Rule 23). The appellate court held that "[d]efendant ha[d] forfeited his claims by failing to raise them in a motion to reconsider [the] sentence." *Id.* at 4-5.

¶ 8    Foreseeing the finding of forfeiture, defendant further requested the appellate court "to consider the issue as plain error." *Id.* at 5. To this claim of plain error, the appellate court

responded, "The record shows that the trial court committed no error during sentencing. The court specifically stated that it had reviewed the presentence investigation report, which included the information that defendant argues the court did not consider." *Id.* at 5. Given the circumstances of the offense and defendant's criminal history, the prosecutor had recommended imprisonment for 65 years. *Id.* at 6. Defense counsel, on the other hand, had "argued in favor of a lesser sentence, which would necessarily be approximately 50 years." *Id.* The sentencing court decided on a prison term between those two recommendations. "The trial court did not err in imposing a 55-year aggregate sentence," the appellate court concluded. *Id.*

¶ 9    Defendant petitioned to the Illinois Supreme Court for leave to appeal. On January 30, 2008, the supreme court denied his petition. *People v. Haines*, No. 105677 (Ill. Jan. 30, 2008).

¶ 10    In 2008, defendant petitioned the circuit court for postconviction relief. In that initial postconviction proceeding, he made only two claims: (1) trial counsel had rendered ineffective assistance by (a) failing to move for the suppression of a wire recording and (b) failing to interview an alibi witness, and (2) appellate counsel had rendered ineffective assistance by neglecting to raise those failures on direct appeal. The court granted the State's motion to dismiss the alibi-witness claim on the ground that it was merely conclusory. Then, after an evidentiary hearing, the court denied relief on the suppression claim.

¶ 11    Again the appellate court affirmed the circuit court's judgment (*People v. Haines*, 2013 IL App (4th) 111086-U, ¶ 3), and again the supreme court denied a petition by defendant for leave to appeal (*People v. Haines*, No. 116241 (Ill. Sept. 25, 2013)).

¶ 12    In 2019, in the circuit court, defendant moved for permission to file a successive postconviction petition. See 725 ILCS 5/122-1(f) (West 2018). Mainly on the authority of *Miller* and *Harris*, he challenged his 55-year prison sentence as unconstitutionally excessive for an 18-year-old offender such as he. He pointed out that age 18, which society had designated as the age of majority, had little to do with the biological reality of brain development. He suggested that, like teenagers who fell on the younger side of the arbitrary dividing line that was age 18, he was still neurologically immature when he murdered Foster. The brain of an 18-year-old, he argued, more resembled the brain of a 17-year-old than the brain of an adult. The *de facto* life sentence, in his view, failed to account for his youth and his potential for rehabilitation, thereby violating the eighth amendment (U.S. Const., amend. VIII) and the proportionate-penalties clause (Ill. Const. 1970, art. I, § 11). See *People v. Buffer*, 2019 IL 122327, ¶ 40 (holding that a prison term longer than 40 years is a *de facto* life sentence).

¶ 13    The circuit court denied defendant permission to file the proposed successive petition. The court reasoned, essentially, that because defendant was an adult when he committed the murder, he had been rightly sentenced as an adult.

¶ 14    Defendant appeals from the circuit court's denial of permission to file his proposed successive petition for postconviction relief.

¶ 15                                    II. ANALYSIS
¶ 16                A. The *Res Judicata* Obstacle to a Proportionate-Penalties Claim
                                in a Postconviction Proceeding
¶ 17    In the circuit court, defendant filed no postsentencing motion. Therefore, on direct appeal, the appellate court found a forfeiture of any sentencing issues. *Haines*, No. 4-06-0549, slip order at 4-5. Notwithstanding that finding of forfeiture, the appellate court went ahead and

evaluated defendant's claim that the circuit court, in the sentencing hearing, failed to take into account his youth, his nonviolent history, and his drug addiction. See *id.* The appellate court rejected that sentencing claim on its merits, concluding that the circuit court had "not err[ed] in imposing a 55-year aggregate sentence." *Id.* at 6.

¶ 18    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) is not meant to provide defendants an opportunity to relitigate their claims. Issues that defendants raised on direct appeal are considered, in postconviction proceedings, to be barred by *res judicata*. *People v. Kubat*, 114 Ill. 2d 424, 436 (1986); *People v. Gaines*, 105 Ill. 2d 79, 87-88 (1984). "[W]here an appeal was taken from a conviction, the judgment of the reviewing court is *res judicata* as to all issues actually raised, and those that could have been presented but were not are deemed [forfeited]." (Internal quotation marks omitted.) *Gaines*, 105 Ill. 2d at 87-88. Defendant claimed on direct appeal that, in view of his youth and the other mitigating circumstances, his aggregate prison sentence was too long. The appellate court addressed that claim on direct appeal, finding no error in the sentence. *Haines*, No. 4-06-0549, slip order at 6. Regardless of how the decision on direct appeal is interpreted—as finding the sentencing claim to be forfeited and the forfeiture to be unaverted by the plain-error doctrine or as finding the sentencing claim to be meritless—defendant raised his sentencing claim on appeal, and the appellate court decided the claim. Consequently, *res judicata* now bars him from relitigating the sentencing claim in a postconviction proceeding. See *People v. Dorsey*, 2021 IL 123010, ¶ 73. To echo the appellate court in *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 63: "Stripped of its spurious constitutional raiment, defendant's claim is no more than a sentencing-discretion or improper-factor argument that was resolved, however much to defendant's dissatisfaction, long ago." Spurious or not, the constitutional raiment is a matter of packaging. Underneath is an ordinary excessive-sentence claim that defendant raised on direct appeal.

¶ 19    Defendant might resist that description. He might object that, on direct appeal, he never raised a *proportionate-penalties claim*, as he wants to do now. Even so, "a defendant cannot obtain relief under the Post-Conviction Hearing Act by rephrasing previously addressed issues in constitutional terms." *People v. Franklin*, 167 Ill. 2d 1, 23 (1995).

¶ 20    A simple illustration of this principle of *res judicata* can be found in *Gaines*. On direct review, Gaines claimed that one of the witnesses for the prosecution, investigator Robert Dwyer, had violated the eavesdropping statute (Ill. Rev. Stat. 1979, ch. 38, ¶ 14-2) by listening on an extension telephone to incriminating conversations between Gaines and his mother and his brother. *People v. Gaines*, 88 Ill. 2d 342, 359 (1981). On statutory grounds, Gaines argued, the circuit court should have barred Dwyer's testimony. In part because an extension telephone was not an eavesdropping device as defined by section 14-1(a) of the eavesdropping statute (Ill. Rev. Stat. 1979, ch. 38, ¶ 14-1(a)), the supreme court, on direct review, rejected Gaines's claim. *Gaines*, 88 Ill. 2d at 363. Later, Gaines petitioned for postconviction relief. One of the claims in his petition was that, by allowing Dwyer to testify to the telephone conversations he had overheard between Gaines and his relatives, the State had "impinged on [Gaines's] right to be free from unreasonable search and seizure, as well as his privilege against self-incrimination. (U.S. Const., amends. IV, V; Ill. Const. 1970, art. I, secs. 6, 10.)." *Gaines*, 105 Ill. 2d at 85-86. Thus, in the postconviction proceeding, Gaines repackaged a previously adjudicated statutory claim as a claim of constitutional violations. The supreme court would not allow him to do so. Even though the elements of the present constitutional claims were

undoubtedly different from the elements of the previous statutory claim, the decision on direct review was *res judicata*. The *res judicata* effect of the previous decision could not "be defeated by rephrasing previously addressed issues in constitutional terms when raising them in the post-conviction petition." *Id.* at 90.

¶ 21    In the present case, in his proposed successive postconviction petition, defendant has rephrased a previously adjudicated sentencing claim, framed originally in statutory law or common law, into a constitutional sentencing claim. On direct appeal, he claimed that the 55-year aggregate prison sentence gave insufficient consideration to his youth. The appellate court decided that claim against him. Now, in the proposed successive postconviction proceeding, defendant brings forward essentially the same claim, but he has dressed it up this time in constitutional clothing.

¶ 22    One item of clothing is the eighth amendment (U.S. Const., amend. VIII) as interpreted by *Miller*. That clothing, we should point out right away, does not even fit because defendant was 18 when he murdered Foster. See *People v. Harris*, 2018 IL 121932, ¶ 61 (declining to extend *Miller* to offenders 18 years of age or older). The other item of clothing is the proportionate-penalties clause. As the supreme court has reiterated, "a petitioner cannot obtain relief under the Post-Conviction Hearing Act simply by rephrasing previously addressed issues in constitutional terms in his petition." (Internal quotation marks omitted.) *People v. Flores*, 153 Ill. 2d 264, 277 (1992). "Such claims will be properly defeated by operation of waiver and *res judicata*." *Id.* at 278. We addressed defendant's sentencing claim on direct appeal. Our decision on direct appeal must not be ignored. The doctrine of *res judicata* bars defendant's proposed successive petition for postconviction relief.

¶ 23                            B. Cause and Prejudice

¶ 24    Let us assume, for the sake of argument, that it is somehow possible to get around the obstacle of *res judicata*. Even so, as we will explain, we encounter a forfeiture in the "cause" language of section 122-1(f) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(f) (West 2018)). That is another reason, sufficient in itself, to affirm the circuit court's judgment. See *People v. Wilson*, 2014 IL App (1st) 113570, ¶ 41 (noting that the appellate court may "affirm [on] any basis that appears in the record").

¶ 25    Section 122-1(f) provides as follows:

> "(f) *** [O]nly one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018).

Thus, to obtain permission to file a successive petition for postconviction relief, the defendant first must identify an objective circumstance that hindered or obstructed the defendant from raising, in the initial postconviction proceeding, the constitutional claim that the defendant wants to raise now. Also, the defendant must demonstrate that the constitutional violation described in the proposed new claim so tainted the trial that the conviction or sentence violated

due process. We decide *de novo*—that is, without any deference to the circuit court's decision—whether the defendant demonstrated "cause" and "prejudice." *People v. Johnson*, 2018 IL App (1st) 153266, ¶ 13.

¶ 26 In the present case—setting off to one side the problem of *res judicata*—we are faced with the question of whether the nonexistence of *Miller* and *Harris* really was cause for defendant's failure to raise his present claim in the initial postconviction proceeding. And even if defendant managed to clear the high hurdle of cause, there would be the further question of whether he suffered prejudice from his earlier failure to raise *Miller* and *Harris*.

¶ 27 Let us consider those two cases, *Miller* and *Harris*, one at a time.

¶ 28                                                   1. *Miller*

¶ 29 In the recent case of *Jones v. Mississippi*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1311 (2021), the United Supreme Court summed up *Miller* as follows: "an individual who commits a homicide when he or she is under 18 may be sentenced to life without parole, but only if the sentence is not mandatory and the sentencer therefore has discretion to impose a lesser punishment." *Miller* requires nothing more than this discretionary sentencing procedure. See *id.* at ___, 141 S. Ct. at 1314 (interpreting *Miller*). If the offender was under the age of 18 when he or she committed the murder, the sentencer must be allowed "to consider youth before imposing a life-without-parole sentence." *Id.* at ___, 141 S. Ct. at 1316. And that is it: *Miller* makes no further demand. *Miller* does not require the sentencing court to find the offender to be incorrigible. *Id.* at ___, 141 S. Ct. at 1317. In fact, *Miller* does not require any "on-the-record sentencing explanation" at all. *Id.* at ___, 141 S. Ct. at 1319. When a court sentences a juvenile offender convicted of murder to life without parole, *Miller* is satisfied if the sentence is discretionary. A discretionary sentencing procedure is all that *Miller* demands.

¶ 30 In the present case, defendant was not a juvenile when he murdered Foster. Rather, defendant was 18, an adult. Hence, the eighth-amendment rationale of *Miller* is inapplicable to defendant. See *id.* at ___, 141 S. Ct. at 1312; *Harris*, 2018 IL 121932, ¶ 61.

¶ 31                                                   2. *Harris*

¶ 32 In *Harris*, 2018 IL 121932, ¶ 1, the defendant was convicted of first degree murder and other violent offenses and was sentenced to a mandatory minimum aggregate term of 76 years' imprisonment. When he committed the offenses, he was 18 years and 3 months old, an adult. *Id.* Nevertheless, on direct appeal, he contended that, in view of his youth, such a long prison term violated the eighth amendment (U.S. Const., amend. VIII) and the proportionate-penalties clause (Ill. Const. 1970, art. I, § 11). *Harris*, 2018 IL 121932, ¶ 17. The appellate court rejected the eighth-amendment claim but held that the aggregate prison term offended the rehabilitation clause of article I, section 11, otherwise known as the proportionate-penalties clause, which required that penalties "be determined with ' "the objective of restoring the offender to useful citizenship." ' " *Id.* ¶ 18 (quoting *People v. Harris*, 2016 IL App (1st) 141744, ¶ 40, quoting Ill. Const. 1970, art. I, § 11). While recognizing the seriousness of the defendant's crimes, the appellate court deemed it to be " 'shock[ing] [to] the moral sense of the community to send this young adult to prison for the remainder of his life, with no chance to rehabilitate himself into a useful member of society.' " *Id.* (quoting *Harris*, 2016 IL App (1st) 141744, ¶ 69).

¶ 33    After granting the State's petition for leave to appeal as a matter of right (*id.* ¶ 20 (citing Ill. S. Ct. R. 317 (eff. July 1, 2006))), the supreme court agreed with the appellate court that the defendant, who was 18 at the time of his offenses, had no legitimate eighth-amendment claim under *Miller* (*id.* ¶ 61). The supreme court declined to "extend[ ] *Miller* to offenders 18 years of age or older." *Id.*

¶ 34    But the defendant in *Harris* also raised a claim under the proportionate-penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). *Harris*, 2018 IL 121932, ¶ 17. He claimed "that it shock[ed] the moral sense of the community to impose a mandatory *de facto* life sentence given the facts of this case, including his youth and the other mitigating factors present." *Id.* ¶ 36. Although he was 18 when he committed the murder (*id.* ¶ 1)—which was the legal age of majority—he argued that age 18 was an arbitrary, socially drawn dividing line that had nothing to do with biology. He alleged that "the evolving science on juvenile maturity and brain development relied upon in *Miller* applie[d] to him" just as much as to, say, a 17-year-old (*id.* ¶ 42). In *Miller*, the United States Supreme Court had cited psychological studies to the effect that " 'adolescent brains [were] not yet fully mature in regions and systems related to higher-order executive functions such as impulse control, planning ahead, and risk avoidance.' " *Miller*, 567 U.S. at 472 n.5 (quoting *amicus* brief of the American Psychological Association). Those psychological studies applied to him, too, the defendant in *Harris* contended (*Harris*, 2018 IL 121932, ¶ 42)—and the appellate court agreed (*Harris*, 2016 IL App (1st) 141744, ¶ 68).

¶ 35    Not so fast, the supreme court said. The defendant's as-applied claim under the proportionate-penalties clause rested on no evidence, at least none specific to him as an individual and to the circumstances of his crimes. Because the defendant never raised his as-applied claim in the circuit court, no evidentiary hearing had been held on that claim. *Harris*, 2018 IL 121932, ¶ 40. Consequently, there were no "specific facts and circumstances" for the appellate court and the supreme court to review. *Id.* ¶ 38. If the defendant had been a *juvenile* when he committed his offenses, no further evidence would have been necessary: it would have been as simple as applying *Miller*. See *id.* ¶ 44. Because, however, the defendant in *Harris* was 18 when he committed his offenses, he was an adult offender, and "*Miller* [did] not apply directly to his circumstances." *Id.* ¶ 45.

¶ 36    The supreme court continued:

> "The record must be developed sufficiently to address [the] defendant's claim that *Miller* applies to his particular circumstances. As we stated in *Holman*,
>
> > 'The defendant's claim in *Thompson* illustrated that point. *The defendant there maintained that the evolving science on juvenile maturity and brain development highlighted in* Miller *applied not only to juveniles but also to young adults like himself between the ages of 18 and 21*. [Citation.] We rejected that claim because the record contained "nothing about how that science applies to the circumstances of defendant's case, the key showing for an as-applied constitutional challenge." [Citation.] We stated the trial court was the most appropriate tribunal for such factual development.' " (Emphasis added.) *Id.* (quoting *People v. Holman*, 2017 IL 120655, ¶ 30).

From the quote within that quote, it is evident that when the supreme court spoke of "applying *Miller*" to the defendant's particular facts and circumstances, the supreme court did not mean applying the legal rule in *Miller*. (The legal rule in *Miller* had to do with the eighth amendment,

not the proportionate-penalties clause.) Rather, in *Harris*, the supreme court meant applying, to a proportionate-penalties claim, the brain research cited by *Miller*. Again, the legal rule in *Miller* was that "an individual who commit[ted] a homicide when he or she [was] under 18 [might] be sentenced to life without parole, but only if the sentence [was] not mandatory and the sentencer therefore ha[d] discretion to impose a lesser punishment." *Jones*, 593 U.S. at ___, 141 S. Ct. at 1311 (summing up *Miller*). This was a procedural requirement. The defendant's discontent in *Harris*, by contrast, was with the *length* of the 76-year prison sentence, not merely with the nondiscretionary *procedure* by which the prison sentence had been imposed (although that, too, was *part* of his complaint). See *Harris*, 2018 IL 121932, ¶ 36 (referencing the defendant's "conten[tion] that it shocks the moral sense of the community to impose a mandatory *de facto* life sentence given the facts of this case, including his youth and the other mitigating factors present"). What made a prison sentence disproportionate was its length, not the procedure by which the sentence was imposed. A proportionate-penalties claim challenges the sentencing outcome, not merely the process by which the outcome was reached. In the light of his youth and the other mitigating circumstances, 76 years' imprisonment offended the moral sense of the community: that was the defendant's claim in *Harris*—and, presumably, it was a claim he would have made regardless of whether the sentencer had been statutorily free to impose a lesser aggregate sentence. A *Miller* procedural fix, *i.e.*, making the prison sentence discretionary, would have left the defendant's proportionate-penalties claim unaddressed if he still ended up receiving 76 years' imprisonment. So, by "applying *Miller*," the supreme court in *Harris* meant only applying the neuroscientific research referenced in *Miller*, not its rather limited legal rule (which, anyway, was inapplicable to an 18-year-old offender, such as the *Harris* defendant). See *id.* ¶ 45.

¶ 37    It could not be taken for granted, however, that the brain-development discussion in *Miller* applied to the defendant in *Harris*. "[T]he record here [did] not contain evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applie[d] to defendant's specific facts and circumstances." *Id.* ¶ 46. A postconviction proceeding, the supreme court added, would be ideally suited to this needed development of the evidentiary record. *Id.* ¶ 48.

¶ 38    In *Harris*, which was a direct appeal, the contemplated postconviction proceeding would have been an *initial* postconviction proceeding. In the present case, by contrast, defendant wants to bring a *successive* postconviction proceeding. That is a major difference. As the supreme court has remarked, the Act "contemplates the filing of only one postconviction petition," and "a defendant faces immense procedural default hurdles when bringing a successive postconviction petition." *People v. Davis*, 2014 IL 115595, ¶ 14. Because successive petitions for postconviction relief call into doubt "the finality of criminal litigation, these hurdles are lowered only in very limited circumstances." *Id.*

¶ 39    These high hurdles that defendant must surmount are cause and prejudice. To decide whether defendant has shown cause for failing to raise his present claim in the initial postconviction proceeding, we first must be clear what his present claim is. As we have discussed, defendant has no eighth-amendment claim under *Miller*—but he also invokes *Harris*. He wants to raise the sort of claim that the defendant raised in *Harris*.

¶ 40    Specifically, then, what was the claim that the defendant raised in *Harris* (other than the eighth-amendment claim, which the supreme court rejected)? The *Harris* defendant raised this claim: the juvenile brain-development research that the Supreme Court cited in *Miller* applied

- 8 -

equally to him, a young-adult offender, and made his *de facto* life sentence shocking to the moral sense of the community and, hence, a violation of the proportionate-penalties clause (Ill. Const. 1970, art. I, § 11). *Harris*, 2018 IL 121932, ¶ 36. The *Harris* defendant's claim is defendant's proposed successive claim in the present case.

¶ 41　　The first question under section 122-1(f) is whether defendant had "cause" for failing to raise that claim (so described) in 2008, in his initial postconviction proceeding, a decade before *Harris* was issued. See 725 ILCS 5/122-1(f) (West 2018).

¶ 42　　　　　　　3. *Lack of Cause for Failing to Raise a Proportionate-Penalties*
*Claim in the Initial Postconviction Proceeding*

¶ 43　　Because the statutory phrase "objective factor that impeded his or her ability to raise a specific claim" (*id.*) comes from federal *habeas corpus* law (see *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991)), our supreme court has relied on that body of law in interpreting and applying the Act (see *People v. Hodges*, 234 Ill. 2d 1, 12 (2009)). The previous unavailability of a legal or factual basis for the claim can qualify as cause. More precisely, to quote the United States Supreme Court, "[o]bjective factors that constitute cause include *** a showing that the factual or legal basis for a claim was not reasonably available to counsel." (Internal quotation marks omitted.) *McCleskey*, 499 U.S. at 493-94.

¶ 44　　A legal rule is novel, and its novelty is cause for omitting to raise the rule earlier, if the defendant did not have "at his disposal the essential legal tools with which to construct his claim in time to present the claim" in the initial postconviction proceeding. *Waldrop v. Jones*, 77 F.3d 1308, 1315 (11th Cir. 1996). In other words, "a rule is 'novel,' and therefore [is] cause for a procedural default, only if the petitioner did not have the legal tools to construct the claim before the rule was issued." *Id.*

¶ 45　　"Construct" is a significant choice of word. If, in the exercise of reasonable diligence, a claim can be built out of existing legal materials, the defendant has to build the claim without waiting for someone else in another case to do so. Defendants cannot wait until a claim falls ready-made into their lap. Some assembly may be required. Ease of argument is not the standard. "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537 (1986). As a matter of fact, our own supreme court declines to accept a lack of precedent, or even adverse precedent, as cause. "[T]he lack of precedent for a position," our supreme court says, "differs from 'cause' for failing to raise an issue, and a defendant must raise the issue, even when the law is against him, in order to preserve it for review." *People v. Guerrero*, 2012 IL 112020, ¶ 20.

¶ 46　　Years before defendant's initial postconviction proceeding in 2008, Illinois courts recognized as-applied claims under the proportionate-penalties clause. See *People v. Miller*, 202 Ill. 2d 328, 343 (2002) (*Leon Miller*) (affirming the trial court's finding that the multiple-murder sentencing statute as applied to the juvenile defendant, convicted on a theory of accountability as a lookout, violated the proportionate penalties clause of the Illinois Constitution); *People v. Sawczenko-Dub*, 345 Ill. App. 3d 522, 532-33 (2003) (addressing, on its merits, the defendant's "conten[tion] that the sentencing scheme for first degree murder by personally discharging a firearm violates the proportionate penalties clause as applied to her").

¶ 47        Also, decades before *Harris*, Illinois case law held that the proportionate-penalties clause required the sentencing court to take into account the defendant's "youth" and "mentality." *People v. Maldonado*, 240 Ill. App. 3d 470, 485-86 (1992); *People v. Center*, 198 Ill. App. 3d 1025, 1034 (1990). That was why, in *Maldonado*, the appellate court reduced the sentence of a 20-year-old offender. See *Maldonado*, 240 Ill. App. 3d at 486. And that was why, in *Center*, the appellate court reduced the sentence of a 23-year-old offender. See *Center*, 198 Ill. App. 3d at 1035. And, finally, that was why, in *People v. Adams*, 8 Ill. App. 3d 8, 13-14 (1972), the appellate court reduced the sentence of an 18-year-old offender (although, admittedly, in *Adams*, the proportionate-penalties clause was not explicitly referenced). Neurologically immature brains with poor executive control fall quite neatly into the *Center* and *Maldonado* categories of "youth" and "mentality." To be sure, "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing." *Dorsey*, 2021 IL 123010, ¶ 74. And yet, as *Maldonado*, *Center*, and *Adams* demonstrate, Illinois courts also have long been aware that less than mature age can extend into young adulthood—and they have insisted that sentences take into account that reality of human development.

¶ 48        Defendant represents to us that, "[u]ntil recently, Illinois courts consistently rejected the notion that a life sentence for an emerging adult offended the Illinois Constitution under the proportionate penalties clause." In this context, he cites three appellate court decisions: *People v. Griffin*, 368 Ill. App. 3d 369 (2006); *People v. McCoy*, 337 Ill. App. 3d 518, 523 (2003); and *People v. Winters*, 349 Ill. App. 3d 747 (2004). In none of those decisions, however, did the appellate court declare *the proportionate-penalties clause* to be categorically inapplicable to life sentences imposed on young-adult offenders. Instead, in those decisions, the appellate court held a decision by the Illinois Supreme Court, *Leon Miller*, to be categorically inapplicable to young- adult offenders. *Griffin*, 368 Ill. App. 3d at 379; *McCoy*, 337 Ill. App. 3d at 525; *Winters*, 349 Ill. App. 3d at 750-51. In *Leon Miller*, the supreme court held that a statutory sentencing scheme that required the 15-year-old offender to be sentenced to natural-life imprisonment for two murders on a theory of accountability violated the proportionate-penalties clause under the facts of that case. *Leon Miller*, 202 Ill. 2d at 341. (The juvenile had served merely as a lookout.) *Leon Miller* and the distinguishing appellate court cases that defendant cites have nothing to do with him. Instead of being convicted on a theory of accountability, he was convicted of personally shooting Foster to death. *Griffin*, *McCoy*, and *Winters* would have in no way hindered defendant from raising a proportionate-penalties claim. Besides, even if those cases somehow had militated against his proportionate-penalties claim— those cases had no such tendency, but even if they had—we again note the supreme court's holding in *Guerrero* that "a defendant must raise the issue, even when the law is against him, in order to preserve it for review." *Guerrero*, 2012 IL 112020, ¶ 20.

¶ 49        We conclude, then, that in 2008 defendant had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause. See *Waldrop*, 77 F.3d at 1315. To be sure, *Harris*, issued some 10 years after the initial postconviction proceeding, would have made it easier for defendant to raise his claim. But, again, the question is not whether subsequent legal developments have made it easier to raise the claim. *Smith*, 477 U.S. at 537. Rather, the question is whether, at the time of the initial postconviction proceeding, Illinois law provided the tools with which to raise the claim. See *id.* Despite the nonexistence of *Harris*,

the legal basis of defendant's present proposed claim was reasonably available at the time of the initial postconviction proceeding. See *Murray*, 477 U.S. at 536-37.

¶ 50 The nonexistence of *Miller* was no impediment to raising the claim in the initial postconviction petition. Recently, the Illinois Supreme Court held as follows in an appeal from the denial of permission to file a successive petition for postconviction relief:

> "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause. See [*People v.*] *Patterson*, 2014 IL 115102, ¶ 97 ('A ruling on a specific flavor of constitutional claim may not justify a similar ruling brought pursuant to another constitutional provision.'). As [the] defendant acknowledges, Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing. Thus, *Miller*'s unavailability prior to 2012 at best deprived [the] defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' See [*LaPointe*], 2018 IL App (2d) 160903, ¶ 59." *Dorsey*, 2021 IL 123010, ¶ 74.

¶ 51 The young-adult brain research to which *Miller* and *Harris* gave their imprimatur provides some helpful support for defendant's claim under the proportionate-penalties clause. It already was accepted in Illinois law, however, that there was a significant developmental difference not only between minors and adults but also between young adults and older adults. Over a hundred years ago, discussing "a minor" (note the term) "between the ages of sixteen and twenty-one years," our supreme court remarked, "There is in the law of nature, as well as in the law that governs society, a marked distinction between persons of mature age and those who are minors. The habits and characters of the latter are, presumably, to a large extent as yet unformed and unsettled." *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 422-23 (1894). The new brain research referenced in *Miller* and *Harris* is merely some helpful support alongside a "law of nature" that the supreme court acknowledged more than a century ago. The emergence of some helpful support for a claim that already was raisable is not cause. *Dorsey*, 2021 IL 123010, ¶ 74.

¶ 52 Defendant complains that, in declining to find cause, we "ignore[ ] a plethora of cases that have held that as-applied *Miller* claims by defendants 18 years of age or older merited leave to file in successive postconviction proceedings." See, *e.g.*, *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 2; *People v. Bland*, 2020 IL App (3d) 170705, ¶ 10. As we already have discussed, however, a *Miller* claim by a defendant 18 years of age or older is a contradiction in terms. See *Harris*, 2018 IL 121932, ¶ 61. As the appellate court put it in *LaPointe*, "*Miller* simply does not apply to a sentence imposed on one who was at least 18 at the time of his offense." *LaPointe*, 2018 IL App (2d) 160903, ¶ 47.

¶ 53 In *LaPointe*, the defendant was 18 years and 37 days old when, in 1978, he murdered a taxi driver. *Id.* ¶ 2. He pleaded guilty (*id.*), and the circuit court sentenced him to natural-life imprisonment (*id.* ¶ 10). In 2016, about four years after the United States Supreme Court issued its decision in *Miller*, the defendant petitioned for permission to file a successive postconviction petition on the grounds that he " 'was not a mature adult' " when he committed the murder (*id.* ¶ 19) and that the circuit court had "failed to consider several of the mitigating factors that *Miller* required" (*id.* ¶ 20). His proposed successive petition invoked both the eighth amendment (U.S. Const., amend. VIII) and the proportionate-penalties clause (Ill.

Const. 1970, art. I, § 11). *LaPointe*, 2018 IL App (2d) 160903, ¶ 25. The circuit court denied him permission to file the proposed successive petition. *Id.* ¶ 29.

¶ 54    In affirming the denial, the appellate court in *LaPointe* noted that, at the time the defendant filed his initial petition for postconviction relief, the proportionate-penalties clause of the Illinois Constitution was in existence, he was aware of his own youth, and it was established in Illinois law that "a defendant's youth [was] highly pertinent to determining the penalty for his crime." *Id.* ¶ 55. Thus, when initially petitioning for postconviction relief, the defendant in *LaPointe* had all "the materials *** needed to *assemble* an argument that his sentence was unconstitutionally severe in light of his youth." (Emphasis added.) *Id.* Indeed, he had so argued on direct appeal. *Id.*

¶ 55    True, it was not until the defendant in *LaPointe* filed his initial postconviction petition that *Miller* announced a new substantive rule of constitutional law and cited some neurological research in support of the new rule of law. *Id.* ¶¶ 57-58. Nevertheless, *Miller*'s new rule of law was inapplicable to 18-year-old offenders such as the defendant, and the neurological research cited in *Miller* was not in itself a new rule of law (*id.* ¶ 58). The neurological research "did add to the received wisdom in favor of according a defendant's youth great weight in sentencing." *Id.* In that respect, science provided "some helpful support" for the defendant's proportionate-penalties claim. *Id.* ¶ 59. The appellate court continued, however:

> "Surely, [the] defendant's contention that this created 'cause' proves too much. If the acquisition of new scientific knowledge to support an already viable claim were all that a defendant needed to show in order to raise the claim years later, then the 'cause' requirement of section 122-1(f) would be a weak threshold indeed." *Id.*

In *Dorsey*, the supreme court signaled its agreement with that analysis in *LaPointe*. See *Dorsey*, 2021 IL 123010, ¶ 74 (remarking that "*Miller*'s unavailability prior to 2012 at best deprived [the] defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause' " (quoting *LaPointe*, 2018 IL App (2d) 160903, ¶ 59)).

¶ 56    The same thing could be said of *Harris* that *LaPointe* said of *Miller*. If *Harris* had existed at the time of defendant's initial postconviction proceeding, that case would have provided some helpful support for a proportionate-penalties claim that the sentence gave insufficient consideration to his youth. *Harris* held that a young-adult offender could use the neurological research from *Miller* to support his proportionate-penalties claim that a statutory sentencing scheme, as applied to him, was unconscionable in view of his neurological immaturity (provided that the defendant showed how the research related to his particular circumstances). *Harris*, 2018 IL 121932, ¶ 44. But defendant did not need *Harris* to tell him that. Not everything the supreme court says in its decisions is newly minted law. Under already-existing case law, the proportionate-penalties clause required sentencing courts to take into account the immaturity or incomplete development of young adults. See *Maldonado*, 240 Ill. App. 3d at 485-86; *Center*, 198 Ill. App. 3d at 1034. *Necessarily*, then, it would have been entirely acceptable for a young-adult offender to present neurological research buttressing the already-accepted "wisdom in favor of according a defendant's youth great weight in sentencing." *LaPointe*, 2018 IL App (2d) 160903, ¶ 58. The claim was buildable.

¶ 57    In short, then, the nonexistence of *Harris* was no cause for defendant's failure to raise, in his initial postconviction proceeding, the proportionate-penalties claim that he seeks to raise now. We find a forfeiture under section 122-1(f) in addition to *res judicata*.

¶ 58                                III. CONCLUSION

¶ 59        Because of *res judicata* and, alternatively, because of defendant's failure to clear the high
hurdle of cause in section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2018)), we affirm
the circuit court's judgment.

¶ 60        Affirmed.