NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220693-U

NO. 4-22-0693

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 13, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| BRIAN O. SIMMONS, | ) | No. 96CF2965 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Joseph G. McGraw, |
| | ) | Judge Presiding. |

---

JUSTICE HARRIS delivered the judgment of the court.
Justices Steigmann and Doherty concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court committed no error in denying defendant leave to file a successive postconviction petition.

¶ 2     Defendant, Brian O. Simmons, appeals the trial court's denial of his *pro se* request for leave to file a successive postconviction petition. He argues he made a *prima facie* showing of cause and prejudice in connection with his failure to previously raise a claim that his natural life sentence, imposed pursuant to the Habitual Criminal Act (720 ILCS 5/33B-1 (West 1996) (recodified as amended at 730 ILCS 5/5-4.5-95(a))), violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Defendant contends that recent amendments to the Habitual Criminal Act now make it inapplicable to offenders, like him, whose prior convictions were committed when they were under age 21. We affirm.

¶ 3                                 I. BACKGROUND

¶ 4        Following a June 1997 bench trial, defendant was found guilty of armed robbery (720 ILCS 5/18-2(a) (West 1996)) and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). At trial, the State's evidence showed that on the evening of October 20, 1996, defendant, who was then 24 years old, and his codefendant, Landis Simon, entered a Kentucky Fried Chicken restaurant while armed with firearms. They ordered the restaurant's owner to turn over money from cash register drawers and a safe, took money and jewelry from customers, and fired shots inside the restaurant. The police pursued the men as they fled the scene. Simon was shot and wounded by an officer during the chase. Defendant escaped and was arrested later.

¶ 5        Prior to sentencing, the State filed a verified statement, requesting the trial court sentence defendant to life in prison as a habitual offender. At the time of defendant's sentencing, the Habitual Criminal Act provided as follows:

>        "(a) Every person who has been twice convicted *** of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, *** and is thereafter convicted of a Class X felony, *** shall be adjudged an habitual criminal.

>        (b) The 2 prior convictions need not have been for the same offense.

>        (c) Any convictions which result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the purposes of this Section as one conviction.

>        (d) This Article shall not apply unless each of the following requirements are satisfied:

>            (1) the third offense was committed after the effective date of this Act;

(2) the third offense was committed within 20 years of the date that judgment was entered on the first conviction, provided, however, that time spent in custody shall not be counted;

(3) the third offense was committed after conviction on the second offense;

(4) the second offense was committed after conviction on the first offense.

(e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment." *Id.* § 33B-1.

In its filing, the State noted defendant had been convicted of armed robbery, a Class X felony offense, and it asserted that he had two prior Class X felony convictions—one for home invasion in April 1989 (case No. 89-CF-247), and a second for armed robbery in May 1993 (case No. 93-CF-171).

¶ 6     In November 1997, the trial court adjudged defendant a habitual criminal and sentenced him to life in prison for armed robbery. Although the court found defendant's conviction for unlawful possession of a weapon by a felon "merged" with his armed robbery conviction, it also imposed a seven-year, concurrent prison sentence for that offense. Defendant filed a motion to reconsider his sentences, arguing, in part, that the Habitual Criminal Act was unconstitutional and violated the proportionate penalties clause of the Illinois Constitution. The court denied the motion, and defendant appealed.

¶ 7     On direct appeal, defendant argued his conviction and sentence for unlawful possession of a weapon by a felon had to be vacated because it arose from the same act as his armed robbery conviction. The State conceded the error and the appellate court agreed. It vacated

defendant's conviction and sentence for unlawful possession of a weapon by a felon but otherwise affirmed the trial court's judgment. See *People v. Simmons*, 2-98-0201 (1999) (unpublished order under Illinois Supreme court Rule 23(c)).

¶ 8    In July 2000, defendant filed a *pro se* petition for postconviction relief, alleging his appellate counsel was ineffective on direct appeal for failing to present newly discovered evidence of his actual innocence. The trial court advanced defendant's petition to the second stage of postconviction proceedings; however, in April 2003, it granted the State's motion to dismiss the petition. Defendant did not appeal the court's dismissal.

¶ 9    In May 2004, defendant sought leave to file a successive postconviction petition. He alleged he was actually innocent and that the State knowingly used perjured testimony to obtain his conviction. The trial court granted defendant leave to file his petition and appointed counsel. In May 2005, defendant filed an amended postconviction petition, alleging the State knowingly used perjured testimony and made false promises to his codefendant, thereby denying defendant "his best source of exculpatory evidence." In August 2012, defendant filed a second amended postconviction petition, adding a claim of actual innocence based on proposed testimony from his brother. Again, the trial court dismissed defendant's postconviction claims on the State's motion. Defendant appealed, and the appellate court affirmed the trial court's judgment. *People v. Simmons*, 2015 IL App (2d) 131147-U.

¶ 10    In July 2022, defendant moved for a second time to file a successive postconviction petition and sought to raise a claim that his life sentence violated the proportionate penalties clause of the Illinois Constitution as applied to him. He argued that under current Illinois law, he could not be found to be a habitual criminal and, thus, subject to a natural life sentence. Defendant noted that the Habitual Criminal Act was amended in 2021 to require that the first predicate offense that

would subject a person to being adjudged a habitual criminal "was committed when the person was 21 years of age or older." See Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a)). Further, he alleged that he was 16 years old when he committed his first predicate felony and 20 years old when he committed his second. According to defendant, the 2021 amendment to the Habitual Criminal Act reflected (1) a growing understanding of the link between youth and brain immaturity, impulse control, and decision making; (2) "a growing recognition that young people's brains continues [*sic*] to develop well into their twenties"; and (3) that the potential for rehabilitation must be considered by a sentencing court.

¶ 11　　　　Defendant alleged he could not have raised his sentencing challenge in either of his previous postconviction proceedings as the legislature did not amend the Habitual Criminal Act to exclude crimes committed by persons under the age of 21 until many years after those proceedings were concluded. Further, he maintained that he suffered prejudice from not having his sentencing issue raised because, under the current version of the Habitual Criminal Act, he was no longer eligible for sentencing as a habitual criminal. Defendant argued the proportionate penalties clause embodied evolving standards of decency. He asserted that the 2021 amendment to the Habitual Criminal Act showed "the legislature recognized that the concepts of elemental decency and fairness that shape the moral sense of community *** had evolved tremendously from where things stood in 1997 when [he] was sentenced."

¶ 12　　　　In July 2022, the trial court denied defendant's request for leave to file his successive petition, finding defendant failed to show either cause or prejudice in connection with his failure to previously raise his claim.

¶ 13　　　　This appeal followed.

¶ 14　　　　　　　　　　　　　　　II. ANALYSIS

¶ 15　　　　　　On appeal, defendant argues the trial court erred by denying his request for leave to file a successive postconviction petition. He reiterates his claim that his life sentence, entered after he was adjudged a habitual criminal, violated the proportionate penalties clause of the Illinois Constitution because (1) the current version of the Habitual Criminal Act requires qualifying felony offenses to have been committed when the defendant was 21 years of age or older and (2) he was under the age of 21 when he committed his predicate felony offenses. Defendant acknowledges that to file a successive postconviction petition, he had to show both cause for failing to raise his claim in a prior postconviction proceeding and prejudice resulting from that failure. He maintains he sufficiently demonstrated cause because "the statutory amendment he relied upon took effect after he filed his previous post[ ]conviction petitions." Defendant argues prejudice is shown because "he no longer has the necessary predicate convictions to qualify him for a life sentence under the Habitual Criminal Act."

¶ 16　　　　　　　　　　　　　　A. Applicable Law

¶ 17　　　　　　Under the Post-Conviction Hearing Act (Act), an imprisoned defendant may challenge the proceedings that resulted in his or her conviction by asserting that there was a substantial denial of his or her constitutional rights in those proceedings. 725 ILCS 5/122-1(a)(1) (West 2020). However, the Act contemplates the filing of only a single postconviction petition. *People v. Dorsey*, 2021 IL 123010, ¶ 32, 183 N.E.3d 715. "As a result, a defendant faces immense procedural default hurdles when bringing a successive postconviction petition." (Internal quotations omitted.) *Id.*

¶ 18　　　　　　A defendant "must obtain leave of court to file a successive petition." *Id.* "To obtain leave of court, a defendant must demonstrate 'cause' for the failure to raise the claim in the initial petition and that 'prejudice' resulted from that failure." *Id.*

"The Act provides that 'cause' is shown by a defendant identifying an objective factor that impeded the ability to raise a specific claim during the initial postconviction proceeding; 'prejudice' is shown by demonstrating that the claim not raised during the initial proceeding so infected the trial that the resulting conviction or sentence violated due process." *Id.* (citing 725 ILCS 5/122-1(f) (West 2014)).

¶ 19 A defendant must make a *prima facie* showing of cause and prejudice (*People v. Bailey*, 2017 IL 121450, ¶ 24, 102 N.E.3d 114), and both prongs of the cause-and-prejudice standard must be satisfied for the defendant to prevail (*People v. Davis*, 2014 IL 115595, ¶ 14, 6 N.E.3d 709). Further, "[l]eave of court to file a successive petition should be denied when it is clear from a review of the successive petition and supporting documents that the claims raised fail as a matter of law or are insufficient to justify further proceedings." *Dorsey*, 2021 IL 123010, ¶ 33. The trial court's denial of a motion for leave to file a successive postconviction petition is reviewed *de novo*. *Id.*

¶ 20 The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. One way of establishing a proportionate penalties clause violation is for a defendant to show that an imposed penalty "is cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community." *People v. Klepper*, 234 Ill. 2d 337, 348, 917 N.E.2d 381, 386 (2009).

¶ 21 Whether a particular punishment is cruel, degrading, or shocking to the moral sense of the community is based on evolving societal standards "of elemental decency and fairness which shape the 'moral sense' of the community." *People v. Leon Miller*, 202 Ill. 2d 328, 339, 781 N.E.2d

300, 307-08 (2002). Additionally, proportionality review under such evolving standards should largely be informed by objective evidence. *Id.*; see *People v. Moore*, 2020 IL App (4th) 190528, ¶ 31, 170 N.E.3d 204 ("We may determine whether a sentence shocks the moral sense of the community by considering both objective evidence and the community's changing standard of moral decency." (Internal quotation marks omitted.)).

¶ 22                                  B. Cause

¶ 23           Defendant argues on appeal that he established cause for his failure to previously raise his proportionate penalties claim because the claim "was not available to him prior to the 2021 amendment to the [Habitual Criminal] Act." As set forth above, at the time of defendant's 1997 sentencing, the Habitual Criminal Act provided that a person could be adjudged a habitual criminal and sentenced to life in prison if he or she had "been twice convicted *** of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony *** and is thereafter convicted of a Class X felony *** committed after the [two] prior convictions." 720 ILCS 5/33B-1 (West 1996) (recodified as amended at 730 ILCS 5/5-4.5-95). The statute then in effect did not contain age-related requirements. *Id.* On appeal, defendant does not dispute that, at the time of his sentencing, his criminal history qualified him for sentencing as a habitual criminal.

¶ 24           Many years later, in 2021, the Habitual Criminal Act was amended to require that the first predicate offense used to adjudicate a person as a habitual criminal "was committed when the person was 21 years of age or older." See Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a)). Defendant argues he would not qualify for sentencing as a habitual offender under this current version of the Habitual Criminal Act because his predicate felony offenses were committed when he was 16 and 20 years of age. He maintains the 2021

amendment "reflects society's evolving understanding of the link between youth, brain immaturity, impulse control[,] and decision making, as well as the impact those factors may have on a person's potential for rehabilitation." Defendant contends this evolving understanding of youth represents objective evidence that his life sentence—based in part upon offenses he committed when he was under the age of 21—is shocking to the moral sense of the community. Defendant further asserts that until the Habitual Criminal Act was amended in 2021, his "claim was legally and factually precluded by both the language of the Act and precedent," and he had no basis upon which to allege a proportionate penalties clause violation.

¶ 25        "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel" may constitute cause under the cause-and-prejudice test. (Internal quotation marks omitted.) *People v. Pitsonbarger*, 205 Ill. 2d 444, 460, 793 N.E.2d 609, 622 (2002). Further, "[a] legal rule is novel, and its novelty is cause for omitting to raise the rule earlier, if the defendant did not have at his disposal the essential legal tools with which to construct his claim in time to present the claim in the initial postconviction proceeding." (Internal quotation marks omitted.) *People v. Haines*, 2021 IL App (4th) 190612, ¶ 44, 188 N.E.3d 825. Here, we find defendant had the essential legal tools with which to construct his proportionate penalties claim prior to the 2021 amendment to the Habitual Criminal Act, including at the time of his previous postconviction proceedings.

¶ 26        Defendant acknowledges that his sentencing claim is based on the principles espoused by the United States Supreme Court in *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny. In *Miller*, the Supreme Court held "that the eighth amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 479. It based its decision on findings that "juveniles have diminished culpability and greater prospects for reform" and that "mandatory penalties, by their nature, preclude a sentencer from taking

account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.* at 471, 476. In this case, defendant argues that because his predicate felony offenses were committed when he was a minor or a youthful offender under the age of 21, "the reasoning behind *Miller* and its progeny instructs that [his] priors do not evince the same lack of rehabilitative potential as similar predicate offenses committed by adults, and thus, his life without parole sentence is disproportionate."

¶ 27        Notably, however, *Miller*'s unavailability prior to 2012 has been held insufficient to establish "cause" for failing to previously raise a proportionate penalties claim. In *Dorsey*, 2021 IL 123010, ¶¶ 23-24, a juvenile offender sought to file a successive postconviction petition, challenging his 76-year aggregate prison sentence based on *Miller*. Our supreme court found "that *Miller*'s announcement of a new substantive rule under the eighth amendment [did] not provide cause for [the] defendant to raise a claim under the proportionate penalties clause." *Id.* ¶ 74. It stated as follows:

> "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing. Thus, *Miller*'s unavailability prior to 2012 at best deprived [the] defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' " *Id.*

¶ 28        Similarly, in *Haines*, 2021 IL App (4th) 190612, ¶ 57, this court held that the nonexistence of *Miller* and related Illinois case authority was not "cause" for the defendant's failure to raise a proportionate penalties claim in his initial postconviction proceeding. There, the defendant was sentenced to 55 years in prison for an offense he committed when he was 18 years old. *Id.* ¶ 1. Relying on *Miller* and our supreme court's subsequent decision in *People v. Harris*, 2018 IL 121932, 120 N.E.3d 900, the defendant sought leave to file a successive postconviction

petition, arguing that his *de facto* life sentence was shocking to the moral sense of the community and violated the proportionate penalties clause. *Haines*, 2021 IL App (4th) 190612, ¶ 40.

¶ 29     In finding defendant could not establish "cause" under the cause-and-prejudice test, we stated that "decades" before the cases the defendant relied upon were decided, "Illinois case law held that the proportionate-penalties clause required the sentencing court to take into account the defendant's 'youth' and 'mentality.' " *Id.* ¶ 47. Accordingly, we concluded that the defendant "had the essential legal tools to raise his *** proposed claim under the proportionate-penalties clause" at his initial postconviction proceedings. *Id.* ¶ 49. Although *Miller* and *Harris* provided "some helpful support for [the] defendant's claim," it was already accepted under Illinois law "that there was a significant developmental difference not only between minors and adults but also between young adults and older adults." *Id.* ¶ 51.

¶ 30     Finally, in *People v. Kuehner*, 2022 IL App (4th) 200325, ¶¶ 100-107, this court rejected a claim that recent legislative changes, which the defendant argued demonstrated "a societal shift toward more lenient treatment of juvenile offenders," provided "cause" for the defendant's failure to bring a proportionate penalties clause challenge to his 35-year sentence in an earlier proceeding. Relying on the rationale set forth in *Dorsey* and *Haines*, we held as follows:

> "[The] defendant had the necessary tools to construct an as-applied, proportionate penalties claim when he filed his (1) direct appeal in 2005, (2) initial postconviction petition in 2009, and (3) amended postconviction petition in 2018. The statutory amendments in 2014, 2016, and 2019 would have made it easier for him to prove his claim, but he was not foreclosed from bringing that claim earlier." *Id.* ¶ 106.

¶ 31     Like the defendant in *Kuehner*, defendant in this case argues a recent statutory amendment provides evidence of how society's treatment of juvenile and young-adult offenders

has evolved from the time of his sentencing in 1997. However, Illinois has long recognized that youthful offenders are developmentally different from older adult offenders. Accordingly, defendant had the ability to construct his proportionate penalties claim at the time of his earlier postconviction proceedings. Neither the unavailability of *Miller* nor the 2021 amendment to the Habitual Criminal Act provides "cause" for his failure to previously raise that claim.

¶ 32        On appeal, defendant contends that the constitutional claim he is attempting to raise is a novel one due to the recent 2021 amendment to the Habitual Criminal Act. He notes that prior to the 2021 amendment, courts rejected constitutional challenges to the Habitual Criminal Act, including challenges based on the use of convictions obtained while an offender was a juvenile. See *People v. Dunigan*, 165 Ill. 2d 235, 246, 650 N.E.2d 1026, 1031 (1995) (rejecting the defendant's claim that the Habitual Criminal Act violated the proportionate penalties clause and holding that it represented "a careful legislative consideration of both the seriousness of the offense and the rehabilitative potential of offenders subject to its terms"); *People v. Banks*, 212 Ill. App. 3d 105, 108, 569 N.E.2d 1388, 1390 (1991) (holding that the legislature intended that any conviction, including those obtained while the defendant was a minor, would serve to qualify a defendant as a habitual criminal); *People v. Lawson*, 2015 IL App (1st) 120751, ¶¶ 47-53, 29 N.E.3d 464, 477 (rejecting the defendant's argument that his life sentence after being adjudicated a habitual criminal was unconstitutional because it was based in part on conduct he committed when he was under the age of 18).

¶ 33        Defendant's contention is unconvincing. He makes no claim on appeal that the recent changes to the Habitual Criminal Act apply retroactively to his case. Additionally, as set forth above, the fact that developmental differences exist between youthful offenders and offenders who are mature adults, and that such differences are relevant to sentencing considerations, are not

novel concepts under Illinois law. Finally, we note "our own supreme court declines to accept a lack of precedent, or even adverse precedent, as cause." *Haines*, 2021 IL App (4th) 190612, ¶ 45. Specifically, in *People v. Guerrero*, 2012 IL 112020, ¶ 20, 963 N.E.2d 909, the supreme court held that "the lack of precedent for a position differs from 'cause' for failing to raise an issue, and a defendant must raise the issue, even when the law is against him." Accordingly, we reject defendant's arguments and find the trial court committed no error in finding defendant failed to establish the "cause" prong of the cause-and-prejudice test.

¶ 34                                    C. Prejudice

¶ 35        Next, even assuming that defendant could establish cause for his failure to previously raise his proportionate penalties claim, he cannot establish prejudice.

¶ 36        Defendant argues that "public opinion drives legislation" and there is no "better way to discern 'the moral sense of the community' than legislative action." Accordingly, he contends the 2021 amendment to the Habitual Criminal Act, which requires qualifying offenses to have been committed when the defendant was at least 21 years of age, warrants a finding that his life sentence, based on offenses committed when he was 16 and 20, is now shocking to the moral sense of the community and current standards of decency.

¶ 37        "[T]he fact that the legislature has authorized a designated punishment for a specified crime *itself* says something about the general moral ideas of the people with respect thereto." (Emphasis in original and internal quotation marks omitted.) *People v. Rizzo*, 2016 IL 118599, ¶ 37, 61 N.E.3d 92. " 'The legislature's discretion in setting criminal penalties is broad, and courts generally decline to overrule legislative determinations in this area unless the challenged penalty is clearly in excess of the general constitutional limitations on this authority.' " *People v. Coty*, 2020 IL 123972, ¶ 43, 178 N.E.3d 1071 (quoting *People v. Sharpe*, 216 Ill. 2d 481,

- 13 -

487, 839 N.E.2d 492, 497-98 (2005)).

¶ 38    Notably, here, although the legislature amended the Habitual Criminal Act to add an age requirement for qualifying felony offenses, it elected not to make that change retroactive. See *People v. Hunter*, 2017 IL 121306, ¶ 52-54, 104 N.E.3d 358 (stating if a statute is silent as to its temporal reach, section 4 of the Statute on Statutes applies and requires that statutory changes that mitigate a punishment may not be applied to defendants who are sentenced before the statute takes effect). In this case, defendant was sentenced long before the 2021 amendments took effect and, as a result, they do not apply to him. The legislature must have been aware that there would be a category of defendants, sentenced under prior versions of the Habitual Criminal Act, to which the 2021 amendment would not apply. Given these circumstances, defendant's contention that his life sentence, following his adjudication as a habitual criminal, shocks the moral sense of the community lacks merit.

¶ 39                              III. CONCLUSION

¶ 40    For the reasons stated, we affirm the trial court's judgment.

¶ 41    Affirmed.