NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220957-U

NO. 4-22-0957

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 20, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| MARK BYRD, | ) | No. 96CF1597 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Randy Wilt, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice DeArmond and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in denying defendant leave to file a successive
                 postconviction petition.

¶ 2    In October 2021, defendant, Mark Byrd, filed a *pro se* motion for leave to file a successive postconviction petition, arguing his natural-life sentence, imposed under an earlier version of the Habitual Criminal Act (720 ILCS 5/33B-1 (West 1996) (recodified as amended at 730 ILCS 5/5-4.5-95(a))), violates the proportionate-penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Upon finding defendant failed to establish cause for failure to raise the issue earlier, the trial court denied defendant leave. Defendant appeals, arguing a recent amendment to the Habitual Criminal Act, which authorizes a natural-life sentence only when an offender was at least 21 years old at the time of the first predicate offense (Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a)), evidences a change in

community standards around recidivist sentencing of youth and establishes his sentence violates the proportionate-penalties clause. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         After a jury trial for a shooting that occurred in June 1996, defendant was found guilty of first degree murder (720 ILCS 5/9-1(a)(2) (West 1996)). Before sentencing, the State asked the trial court to sentence defendant under the Habitual Criminal Act to a prison term of natural life. In support of its motion, the State attached evidence showing defendant had two previous convictions for Class X offenses, an October 1977 armed-robbery conviction and a May 1981 armed-robbery conviction. In June 1999, the court sentenced defendant, born in November 1960, to natural-life imprisonment. At the time of defendant's sentencing, the Habitual Criminal Act included as predicate offenses those committed when the offender was under the age of 21. See 720 ILCS 5/33B-1 (West 1996).

¶ 5         Since his conviction, defendant has asserted multiple legal challenges. These legal challenges include a direct appeal, a postconviction petition, and two other attempts to obtain leave to file a successive postconviction petition. The latest of those challenges occurred in June 2015.

¶ 6         In July 2021, the General Assembly amended the Habitual Criminal Act. Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a). The general recidivism provisions that allow for an offender to be adjudged a habitual criminal does not apply unless, among other criteria, "[t]he first offense was committed when the person was 21 years of age or older." 730 ILCS 5/5-4.5-95(a)(4)(E) (West 2020).

¶ 7         Approximately three months after the 2021 amendment, defendant filed a *pro se* motion for leave to file a successive postconviction petition. In this motion, defendant

emphasized he was 16 and 20 years old when convicted of the two predicate offenses. Defendant alleged the amendment embraced the " 'new scientific' studies of immaturity in adolescents under the age of (21)." Defendant further alleged: "The new legislation conforms to the Illinois proportionate[-]penalties clause, of restoring offenders back to useful citizenship—while the old habitual criminal statute does not take into consideration the immaturity in adolescents offenders—to the point of not allowing the juvenile offenses to condemn them by the time they reach adulthood." Defendant concluded by arguing the statute, as applied to him, violates the proportionate-penalties clause.

¶ 8        In November 2021, the trial court granted defendant leave to file a successive postconviction petition for first-stage review. The court found defendant satisfied the cause-and-prejudice test and ruled defendant's claims were limited to consideration of essentially two issues: (1) whether the amendment to the Habitual Criminal Act is retroactive and (2) whether defendant's sentence violates the proportionate-penalties clause as two of his offenses were committed before his twenty-first birthday. After defendant filed his successive petition, the court advanced the petition for second-stage review.

¶ 9        At the second stage of postconviction proceedings, the State moved to dismiss defendant's successive postconviction petition; the trial court granted that motion. The court found, in part, defendant failed to establish cause for his failure to raise the proportionate-penalties claim before his third successive postconviction petition. The court noted defendant's last petition was filed in 2015, "years after *Miller* [*v. Alabama*, 567 U.S. 460 (2012)]." The court further found the amendment to the Habitual Criminal Act is not retroactive.

¶ 10        This appeal followed.

¶ 11                                II. ANALYSIS

- 3 -

¶ 12        On appeal, defendant argues the trial court erred in dismissing his third successive postconviction petition, as he has made a substantial showing of a constitutional violation.

¶ 13        The Post-Conviction Hearing Act (Postconviction Act) provides prisoners the means to challenge the proceedings that resulted in their convictions by asserting claims of a substantial denial of constitutional rights in those proceedings. 725 ILCS 5/122-1(a)(1) (West 2020). The Act, however, contemplates the filing of just one postconviction petition. *People v. Dorsey*, 2021 IL 123010, ¶ 32, 183 N.E.3d 715.

¶ 14        If a petitioner makes multiple challenges under the Postconviction Act, *i.e.*, files a successive postconviction petition, he or she must seek leave of court and overcome " 'immense procedural default hurdles.' " *Id.* (quoting *People v. Davis*, 2014 IL 115595, ¶ 14, 6 N.E.3d 709). To overcome these hurdles, a defendant must make a *prima facie* showing of "cause" for his failure to raise the claim in his initial postconviction petition and "prejudice" resulting from that failure. *Id.*; see *People v. Bailey*, 2017 IL 121450, ¶ 24, 102 N.E.3d 114. To prove "cause," a defendant must identify an objective factor that impeded his ability to raise the claim earlier. *Dorsey*, 2021 IL 123010, ¶ 32. One such objective factor is proof the legal basis for that claim was not reasonably available to the defendant, *i.e.*, the legal basis is "novel." *People v. Haines*, 2021 IL App (4th) 190612, ¶¶ 43-44, 188 N.E.3d 825. In the context of successive postconviction petitions, a novel legal rule will be sufficient cause for the procedural default "only if the petitioner did not have the legal tools to construct the claim before the rule was issued." *Id.* ¶ 44 (quoting *Waldrop v. Jones*, 77 F.3d 1308, 1315 (11th Cir. 1996)).

¶ 15        Leave to file a successive postconviction petition should be denied when a review of the record, petition, and supporting documents makes clear the claims in that petition fail as a matter of law or are insufficient to warrant additional proceedings. *Dorsey*, 2021 IL 123010,

¶ 33. Our review of the denial of leave to file a successive postconviction petition is *de novo. Id.*

¶ 16 In his motion for leave to file a successive postconviction petition, the constitutional error defendant alleged is a violation of the proportionate-penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) in that his life sentence is "cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community." *People v. Brown*, 375 Ill. App. 3d 1116, 1118, 874 N.E.2d 607, 608-09 (2007) (setting forth the means by which one may prove his or her punishment violates the proportionate-penalties clause). The question of whether a punishment is cruel, degrading, or wholly disproportionate is based on evolving "concepts of elemental decency and fairness which shape the 'moral sense' of the community." *People v. Miller*, 202 Ill. 2d 328, 339, 781 N.E.2d 300, 307-08 (2002). Legislation enacted by our country's legislatures provides the most reliable objective evidence of the community's moral sense. See *Graham v. Florida*, 560 U.S. 48, 62 (2010).

¶ 17 Defendant's proportionality argument asks us to review the severity of his life sentence "within our community's evolving standard of decency." See *Miller*, 202 Ill. 2d at 340. Our community's moral sense regarding juvenile sentencing has unquestionably evolved over time. See *People v. Aceituno*, 2022 IL App (1st) 172116, ¶¶ 17-18, 216 N.E.3d 237. The amendment to the Habitual Criminal Act to limit natural-life sentences for habitual offenders is just one example of that evolution. See Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a)). As stated above, there were no age restrictions when defendant was sentenced as a habitual criminal offender based on offenses he committed while under age 21. Since the 2021 amendment, however, an offender may be adjudged a habitual criminal offender only when "[t]he first offense was committed when the person was 21 years of age or older." 730

ILCS 5/5-4.5-95(a)(4)(E) (West 2020).

¶ 18 Defendant asserts he established "cause" as the 2021 amendment is "novel" and this legal basis for his claim was not reasonably available to him before he sought leave to file a successive postconviction petition. Defendant acknowledges this court recently rejected a similar claim in *People v. Simmons*, 2023 IL App (4th) 220693-U, ¶¶ 31, 35, but urges us to revisit that analysis and find cause established as the amendment is *the* basis for his claim.

¶ 19 *Simmons* presents a fact pattern remarkably similar to the one here with, as defendant acknowledges, a finding contrary to defendant's position. In *Simmons*, the defendant was found guilty of committing armed robbery and unlawful possession of a weapon by a felon in October 1996, when he was 24 years old. *Id.* ¶ 4. Because of two previous offenses committed when he was 16 and 20 (*id.* ¶ 10), the defendant was sentenced to natural life as a habitual offender. *Id.* ¶¶ 5-6. In July 2022, the *Simmons* defendant sought leave to file a successive postconviction petition to raise a claim his sentence, based on the 2021 amendment to the Habitual Criminal Act, violated the proportionate-penalties clause as applied to him. *Id.* ¶ 10. The defendant argued the amendment reflected: "(1) a growing understanding of the link between youth and brain immaturity, impulse control, and decision making; (2) 'a growing recognition that young people's brains continue[ ] to develop well into their twenties'; and (3) that the potential for rehabilitation must be considered by a sentencing court." *Id.* The defendant further argued he could not have raised this claim earlier as the legislature had not yet amended the Habitual Criminal Act. *Id.* ¶ 11. The trial court denied his motion for leave upon finding the defendant failed to satisfy the cause-and-prejudice test. *Id.* ¶ 12.

¶ 20 On appeal, this court agreed with the *Simmons* trial court, finding, in part, the defendant failed to establish cause for not having earlier raised his proportionate-penalties claim.

*Id.* ¶ 33. Our analysis began by referencing *Miller* and its progeny. *Id.* ¶ 26. We noted *Miller*, which held the eighth amendment (U.S. Const., amend. VIII) barred sentencing schemes that mandate life imprisonment without the possibility of parole for juvenile offenders, was based on findings " 'juveniles have diminished culpability and greater prospects for reform' and *** 'mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it.' " *Simmons*, 2023 IL App (4th) 220693-U, ¶ 26 (quoting *Miller*, 567 U.S. at 471, 476, 479). We then noted the Illinois Supreme Court found the unavailability of *Miller* insufficient to establish "cause" for the failure to raise a proportionate-penalties claim before 2012, as " 'Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing.' " *Simmons*, 2023 IL App (4th) 220693-U, ¶ 27 (quoting *Dorsey*, 2021 IL 123010, ¶¶ 23-24, 74). After summarizing other Illinois decisions, we found the *Simmons* defendant similarly had the legal tools necessary to construct his claim in earlier postconviction proceedings:

> "Like the defendant in [*People v. Kuehner*, 2022 IL App (4th) 200325, ¶ 106], defendant in this case argues a recent statutory amendment provides evidence of how society's treatment of juvenile and young-adult offenders has evolved from the time of his sentencing in 1997. However, Illinois has long recognized that youthful offenders are developmentally different from older adult offenders. Accordingly, defendant had the ability to construct his proportionate[-]penalties claim at the time of his earlier postconviction proceedings. Neither the unavailability of *Miller* [*v.*

*Alabama*, 567 U.S. 460 (2012)], nor the 2021 amendment to the Habitual Criminal Act provides 'cause' for his failure to previously raise that claim." *Id.* ¶ 31.

We further rejected the contention the defendant's claim based on the 2021 amendment was "novel," concluding "the fact that developmental differences exist between youthful offenders and offenders who are mature adults[ ] and that such differences are relevant to sentencing considerations[ ] are not novel concepts under Illinois law." *Id.* ¶¶ 32-33.

¶ 21 Defendant asks this court to revisit *Simmons* by emphasizing our reliance on *Kuehner* in *Simmons* is misplaced. Defendant contends the legislative amendments referenced in *Kuehner* were collateral to the underlying issue, while here he contends he is entitled to relief *because* the legislature amended the statute by which he was sentenced.

¶ 22 We are not convinced. In *Kuehner*, the defendant, who was 17 years old when he committed murder and home invasion, argued his 35-year sentence violated the proportionate-penalties clause and the eighth amendment. *Kuehner*, 2022 IL App (4th) 200325, ¶¶ 1, 5. To demonstrate the "societal shift toward more lenient treatment of juvenile offenders," defendant cited three legislative changes. *Id.* ¶ 100. These changes included the extension of the cutoff date for juvenile jurisdiction from an offender's seventeenth birthday to his or her eighteenth birthday, the codification of the juvenile-sentencing factors of *Miller*, and the opportunities for parole for offenders under the age of 21. See *id.* We acknowledged these amendments "would have made it easier for him to prove his claim," but we concluded "he was not foreclosed from bringing that claim earlier." *Id.* ¶ 106.

¶ 23 Here, first, we reject the claim defendant is entitled to relief "*because* the legislature amended the statute under which he was sentenced." (Emphasis in original.)

Defendant concedes he is not arguing the amendment applies retroactively. At best, the 2021 amendment provides an example of the societal shift toward more lenient sentencing of youthful offenders that would have made it easier to prove his claim. We agree with the analysis in *Simmons*—the amendment is not novel.

¶ 24 We find *Simmons* persuasive. Defendant has not shown "cause" for his failure to raise his proportionate-penalties claim. The trial court did not err in denying his request for leave to file a successive postconviction petition.

¶ 25                                        III. CONCLUSION

¶ 26 We affirm the trial court's judgment.

¶ 27 Affirmed.