2024 IL App (1st) 221324-U

SECOND DIVISION
March 29, 2024

No. 1-22-1324

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 84 CO 1426804 |
| | ) | |
| MARVIN BRYANT, | ) | Honorable |
| | ) | Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in denying defendant's motion for leave to file his fifth successive postconviction petition because his claim was previously raised and is barred by *res judicata*.

¶ 2    Defendant Marvin Bryant appeals the trial court's denial of his motion for leave to file his *pro se* successive postconviction petition. Specifically, he contends that his mandatory natural life sentence imposed under a previous version of the Habitual Criminal Act (HCA) (Ill. Rev. Stat. 1983, ch. 38, ¶ 33B-1 (recodified as amended at 730 ILCS 5/5-4.5-95(a) (West 2022)) violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I,

§ 11) because his sentence was premised on a predicate offense committed when he was 19 years old. Based on emerging authority regarding youthful offenders, defendant asserts that he satisfied the requisite cause and prejudice for filing a successive postconviction petition and the trial court erred in denying his motion.

¶ 3    Defendant, along with his four codefendants, William Glover, Marvin Barber, David DuPree, and Markus Hunter[1], were charged with multiple offenses stemming from an armed robbery that occurred the night of December 7, 1984, at an illegal gambling club run by Eddie Morris at 3735 South Ellis Avenue in Chicago, Illinois. During this incident, Morris, his family, and patrons of his club were accosted and robbed at gunpoint, and following a joint jury trial, all of the defendants were found guilty of armed robbery, home invasion, and aggravated battery. Defendant was sentenced as an habitual criminal, pursuant to the HCA (Ill. Rev. Stat. 1983, ch. 38, ¶ 33B-1(e)), to a term of natural life in prison for armed robbery and home invasion with a concurrent term of 10 years for aggravated battery. We outline the evidence presented at defendant's jury trial as necessary for our disposition of this appeal. A full discussion of the evidence presented at defendant's trial was set forth in *People v. Glover*, 173 Ill. App. 3d 678 (1988).

¶ 4    On December 7, 1984, shortly before 1 a.m., Officer John Fason was directed via radio to proceed to 3735 South Ellis Avenue in Chicago. Morris operated a club on the first floor and basement of the building at that address and lived with his family on the second floor. Upon arriving at that address, Officer Fason saw a woman on the second floor indicating that he should

---

[1]  None of defendant's codefendants are a party to this appeal.

enter, so he kicked in the door and entered the building with two other officers. After speaking with people at the scene, Officer Fason arrested Glover and another officer arrested Hunter.

¶ 5     When Officer Robert Andler arrived at the scene a few minutes later, he saw a man run out of the building. Officer Andler observed other officers looking for that man with one of those officers finding DuPree lying on the ground between the garbage cans and the shrubs of a nearby house. That officer arrested DuPree and found $350 in small bills upon searching him. Another officer found a carbine pistol in the shrubs next to the building. Other officers saw defendant and Barber running down the street away from the club, and the officers chased the men for a couple of blocks before placing the men under arrest. Officers found several pieces of jewelry on defendant at the time of his arrest.

¶ 6     Multiple patrons of the club also testified about the armed robbery. Clarence Spears was playing a video game on the first floor of the club when he saw DuPree and Barber enter the club and noticed that Barber had a gun in his hand. Barber went to the bar, took money out of the cash register, and took cigarettes from behind the bar. When DuPree blocked the front door, Spears went to the back staircase, which led to the basement. In the basement, he saw people lined up facing the wall with their hands on the wall. He saw Glover holding a small revolver and defendant holding a larger gun which he identified as one of the guns which the police later recovered.

¶ 7     Glover told people one at a time to step away from the wall, then he searched them and took their valuables. Spears saw Glover take Alfred Johnson's watch, then strike Johnson with his gun, which discharged. When Glover finished taking money and jewelry from everyone in the basement, he instructed them to remain in the room for ten minutes, he then broke the lights

3

and went upstairs with defendant. Spears identified a gun which police recovered at the scene as the gun carried by Barber, and he identified a gold cross which police found in defendant's pocket as the cross which Glover took from Spears.

¶ 8    Wade Curry was in the kitchen on the first floor when he saw Hunter with a gun pointed at the head of a woman who worked in the club. Hunter told Curry to open the door to the basement and go downstairs. The woman followed Curry and Hunter followed her, keeping the gun pointed at her. Curry saw Glover and defendant in the basement. Hunter went upstairs after asking someone where Morris was.

¶ 9    Curry recounted a similar account of the robbery by Glover and defendant as Spears. Glover took Curry's money and jewelry and then told him to stand against the opposite wall. Curry saw Glover strike Johnson with his gun and saw the gun discharge. He also saw Glover strike Norman Jeter with a gun because Jeter took too long to remove his jewelry. DuPree came down to the basement, also carrying a gun, and he left with Glover and defendant when Glover broke the lights. Curry identified guns which the police recovered as the guns which Hunter and defendant carried that night.

¶ 10    Norman Jeter was in the basement of the club when he saw defendant enter and look around the room. Defendant left and he returned shortly thereafter carrying a gun. He cocked the gun and said, "You all know what this is." Jeter testified that Glover came in carrying a pistol and told everyone to get against the wall. Jeter's description of the robbery mostly corroborated Curry's testimony. Alfred Johnson and Larry Niles further corroborated Curry's description of the robbery, and Johnson added that he fell to the floor and passed out when the gun Glover hit

him with discharged. He has lost all vision in one eye and part of the bullet remains lodged in his head.

¶ 11    Rosalind Morris, Eddie Morris's wife, testified that she was sitting in her kitchen after midnight on December 7, 1984, when Hunter came into the kitchen carrying a pistol, ripped the phone off the wall, and asked her where Morris was. She told him Morris was in the back. Hunter pointed the gun at her head and walked next to her to the back of the house. Rosalind knocked on the bathroom door. When Morris opened it, Hunter pushed his way into the bathroom and then he took Rosalind and Morris back to their bedroom. Hunter asked, "where's the money?" Morris and Rosalind insisted that they did not have any money. Hunter took another phone off the bedroom wall, then took a bank full of quarters, an answering machine, some money, and jewelry, and put them in a pillowcase. He told Morris to go downstairs but left Rosalind in the bedroom to get dressed. Hunter took the pillowcase and told Rosalind he would come back in a minute to get her. Once he got downstairs, Rosalind picked up another telephone in the bedroom, dialed 911, and told police an armed man was robbing her home. Shortly thereafter, she saw a police car pull up and she went to the window and waved to the officers. Barber came to her bedroom carrying a gun, cursed when he saw the police cars out front, then began to run.

¶ 12    Morris's testimony substantially corroborated Rosalind's account. Morris added that when Hunter took him downstairs, he saw defendant taking cigarettes and whiskey from the bar. He acknowledged that police had raided his club more than 50 times, charging him with keeping a disorderly house, keeping a gambling house, and selling liquor without a license.

¶ 13     Defendant raised multiple claims on direct appeal, including challenging the constitutionality of the HCA under the proportionate penalties clause. This court affirmed defendant's conviction and sentence. *Glover*, 173 Ill. App. 3d at 682-86.

¶ 14     Defendant has since filed several unsuccessful postconviction petitions. In June 2001, defendant filed a *pro se* postconviction petition, which the trial court dismissed as frivolous and patently without merit in July 2001. Defendant did not appeal this dismissal.  Defendant filed his first successive *pro se* postconviction petition in August 2004, arguing that the HCA violated *ex post facto* principles and this court affirmed the second-stage dismissal of that petition after granting appellate counsel's motion for leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987).  *People v. Bryant*, No. 1-08-0754 (2009) (unpublished order under Supreme Court Rule 23). In February 2012, defendant filed a *pro se* motion for leave to file his second successive postconviction petition, asserting that his indictment was void and defective because he was charged with multiple counts of home invasion for a single entry into a single dwelling, his extended-term sentence for aggravated battery was void, and he was actually innocent. The trial court denied defendant leave to file his petition in April 2012. This court vacated defendant's conviction and sentence for one count of home invasion, but affirmed the trial court's denial of leave to file the successive petition on all other grounds. *People v. Bryant*, 2014 IL App (1st) 121731-U, ¶ 33. In June 2014, defendant sought leave to file his third successive *pro se* postconviction petition, arguing that his sentence was unconstitutional for two reasons: (1) his prior convictions were not submitted to the jury and therefore were not established by the State beyond a reasonable doubt; and (2) his mandatory life sentence violated *Miller v. Alabama*, 567 U.S. 460 (2012), because the trial court was prohibited from considering the scientific

mitigating factors applicable to defendant. The trial court denied defendant leave to file his successive petition in September 2014 and this court affirmed the denial of leave to file that petition after granting appellate counsel's motion for leave to withdraw pursuant to *Finley*, 481 U.S. 551 (1987). *People v. Bryant*, No. 1-14-3379 (2016) (summary order filed pursuant Supreme Court Rule 23(c)(2), (4) (eff. July 1, 2011)). In June 2019, defendant sought leave to file his fourth successive *pro se* postconviction petition, arguing that his mandatory life sentence violated the proportionate penalties clause of the Illinois Constitution because evolving science regarding brain development applied to him because he was 29 years old at the time of the offense. The trial court denied defendant leave to file in August 2019. Defendant did not appeal the denial.

¶ 15     In November 2021, defendant filed a *pro se* motion for leave to file his fifth successive petition, which is at issue in this appeal. In his motion, defendant argued that his mandatory life sentence under the HCA violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) because he was 19 years old when his first predicate offense was committed. Defendant relies on a recent amendment to the HCA that no longer classify any offense committed before age 21 as a qualifying prior conviction. See 730 ILCS 5/5-4.5-95(a)(4)(E) (West 2022). While defendant conceded that the amendment was not retroactive, he quoted *People v. Aikens*, 2016 IL App (1st) 133578, ¶ 38, to assert that the amendment is " 'indicative of a changing moral compass in our society when it comes to trying and sentencing juveniles as adults.' " He contended that he satisfied the requisite cause and prejudice test for filing a successive petition because the law and science supporting his claim was unavailable in his previous petitions and that prejudice resulted from the mandatorily imposed disproportionate

life sentence. Defendant further argues that under today's law, he would not be eligible to be sentenced as an habitual offender, and the severity of his penalty was not in accordance with the seriousness of his crimes. According to defendant, "the recently enacted Illinois law (see ILCS 5/5-4.5-95(a)(4)(E)), under which [defendant] would not be labeled 'an habitual offender' because of a reported mistake as a 'youthful offender' demonstrates the 'mandatorily' imposed natural life sentence no longer reflects Illinois's evolving standard of moral decency."

¶ 16    In January 2022, the trial court entered a written order denying defendant leave to file his successive petition. The court found that defendant's claim fails because the amendment to section 5-4.5-95 is not retroactive. The court, relying on *People v. Lawson*, 2015 IL App (1st) 120751, found that the penalty under the HCA results from the offender committing the third qualifying offense as an adult. The court reasoned that defendant's claim lacked merit because defendant was an adult at the time of his third offense and, unlike the defendant in *Lawson* who was a juvenile when he committed his first offense, defendant was a young adult at the time of his first predicate offense. The court concluded that defendant failed to show that he is prejudiced by his failure to raise the claim in his initial postconviction petition, and it need not determine whether defendant demonstrated cause.

¶ 17    This appeal followed.

¶ 18    On appeal, defendant argues that he has satisfied the cause and prejudice test for filing a successive postconviction petition because (1) he has shown cause since the statutory amendment and legal authority relied on were issued after he filed his previous petitions and (2) he has made a *prima facie* showing of prejudice since the new legislation and case law impacts his mandatory life sentence.

¶ 19    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(a)(1) (West 2018)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Only one postconviction proceeding is contemplated under the Act (*People v. Edwards*, 2012 IL 111711, ¶ 22), and a defendant seeking to file a successive postconviction petition must first obtain leave of court (*People v. Tidwell*, 236 Ill. 2d 150, 157 (2010)). The bar against successive postconviction proceedings should not be relaxed unless (1) a defendant can establish "cause and prejudice" for the failure to raise the claim earlier or (2) he can show actual innocence under the "fundamental miscarriage of justice" exception. *Edwards*, 2012 IL 111711, ¶¶ 22-23; *People v. Smith*, 2014 IL 115946, ¶ 30. Under the cause and prejudice test, a defendant must establish both (1) cause for his or her failure to raise the claim earlier and (2) prejudice stemming from his or her failure to do so. *Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)).

¶ 20    The cause and prejudice standard is higher than the normal first stage "frivolous or patently without merit" standard applied to initial petitions. *Id.* ¶¶ 25-29; *Smith*, 2014 IL 115946, ¶ 35 ("the cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122-2.1(a)(2) of the Act"). "A defendant shows cause 'by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings.' " *People v. Wrice*, 2012 IL 111860, ¶ 48 (quoting 725 ILCS 5/122-1(f) (West 2010)). In other words, to establish "cause" a defendant must articulate why he could not have discovered the claim earlier

9

through the exercise of due diligence. *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 72. A defendant shows prejudice by demonstrating that the claim so infected the trial that the resulting conviction or sentence violated due process. *Wrice*, 2012 IL 111860, ¶ 48. It is defendant's burden to establish a *prima facie* showing of both cause and prejudice in order to be granted leave before further proceedings on his claims can follow. See *People v. Bailey*, 2017 IL 121450, ¶ 24. We review the trial court's denial of leave to file a successive postconviction petition *de novo*. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25.

¶ 21    The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "To succeed on a proportionate penalties claim, a defendant must show either that the penalty imposed is cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community ***." *People v. Klepper*, 234 Ill. 2d 337, 348 (2009). Our supreme court has never defined what kind of punishment constitutes "cruel," "degrading,"," or "so wholly disproportioned to the offense as to shock the moral sense of the community" because, "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *People v. Leon Miller*, 202 Ill. 2d 328, 339 (2002). It is under this evolving societal standard that defendant contends that his mandatory life sentence shocks the moral sense of community.

¶ 22    The State initially contends that defendant's sentencing argument is barred by *res judicata* because he previously argued that his sentence violated the proportionate penalties clause in his direct appeal and his fourth successive postconviction petition.

¶ 23    On direct appeal, defendant argued that his mandatory life sentence violated the proportionate penalties clause because the trial court had no discretion in imposing defendant's sentence under the HCA. *Glover*, 173 Ill. App. 3d at 683. The reviewing court held that defendant's sentence was constitutional and "the legislature properly exercised its authority when it determined that in the public interest, any person who committed Class X felonies on three separate occasions must be sentenced to natural life imprisonment." *Id.* at 684.

¶ 24    In his 2019 postconviction petition, defendant raised an as-applied challenge that his sentence was unconstitutional because the trial court lacked discretion to consider any mitigating factors before imposing the mandatory life sentence. Defendant contended that he was "29 years and 3 weeks" when the third armed robbery was committed on December 7, 1984, and "the continued development of the human brain up to the age of 30 years old in areas of the brain that governs impulsivity, judgment, planning for the future, and foresight of consequences." He argued that his sentence was unconstitutional because it was imposed without an evidentiary hearing considering his youth and its attendant circumstances. The trial court found that defendant failed to establish the requisite prejudice and denied leave to file the petition. Defendant did not appeal this dismissal.

¶ 25    In his reply brief, defendant maintains that his claim is not barred by *res judicata* because the 2021 amendment to the HCA, which form "the central kernel" of his present claim did not exist at the time of his previous sentencing challenges and his claim satisfied the requisite cause prong for this reason.

¶ 26    "The doctrine of *res judicata* bars consideration of issues that were previously raised and definitively settled by judicial decision." *People v. Montanez*, 2023 IL 128740, ¶ 103. A

defendant cannot obtain relief under the Act simply by rephrasing previously addressed issues in constitutional terms in his petition. *People v. Flores*, 153 Ill. 2d 264, 277 (1992). "Such claims will be properly defeated by operation of waiver and *res judicata.*" *Id.* at 278.

¶ 27 An intervening change in the law can establish cause in considering whether to relax the bar of *res judicata* when the intervening change in the law comes from the legislature or a higher court. *People v. Nichols*, 2021 IL App (2d) 190659, ¶ 22. In proceedings under the Act, fundamental fairness for relaxing the doctrine of *res judicata* is established by satisfying the requirements of the cause and prejudice test. *People v. Clark*, 2023 IL 127273, ¶ 45. Since defendant previously challenged his sentence under the proportionate penalties clause, his claim is barred by *res judicata* unless he can overcome that bar by satisfying the cause and prejudice test.

¶ 28 Defendant argues that he has satisfied the cause prong of the cause and prejudice test because prior to the 2021 amendment, the HCA made no distinction between convictions for offenses that occurred when a defendant was under 21 years old and those that occurred when a defendant was over 21. He asserts that this intervening change in the law constitutes the requisite change to file his successive petition because it was unavailable at the time he sought leave to file his previous successive petition in 2019.

¶ 29 At the time of defendant's sentencing in October 1985, the HCA stated:

> "Every person who has been twice convicted in any state or federal court
> of an offense that contains the same elements as an offense now classified in
> Illinois as a Class X felony or murder, and is thereafter convicted of a Class X

felony or murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal." Ill. Rev. Stat. 1983, ch. 38, ¶ 33B-1(a).[2]

Under this statute, "[e]xcept when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment." *Id.* ¶ 33B-1(e). No age requirement was set forth in the statute at the time defendant was adjudged an habitual criminal and sentenced to natural life in prison. See *id.* ¶ 33B-1.

¶ 30    Defendant argues that a recent amendment to the HCA demonstrates society's evolving consideration in sentencing of an offender's age and related characteristics. Public Act 101-652 (eff. July 1, 2021) amended section 5-4.5-95(a) of the Unified Code of Corrections (Code) to provide that the first qualifying offense for Class X sentencing must have been "committed when the person was 21 years of age or older." Pub. Act 101-652 (eff. July 1, 2021) (adding 730 ILCS 5/5-4.5-95(a)(4)(E)).

¶ 31    Defendant concedes that the amended version of the HCA is not retroactive but contends that based on recent case law and statutory changes regarding youthful offenders his natural life sentence now "shocks the moral sense of the people." Records attached to defendant's motion indicated that he was 19 years old at the time his first armed robbery was committed in November 1974.

¶ 32    The sentencing of juvenile and youthful offenders has been evolving in the country over the last several years. Beginning with *Roper v. Simmons*, 543 U.S. 551 (2005), the United States Supreme Court weighed in and set forth new constitutional parameters for the sentencing of juvenile offenders. See also *Graham v. Florida*, 560 U.S. 48, 68 (2010), *Miller v. Alabama*, 567

---

[2] Now codified at 730 ILCS 5/5-4.5-95(a)(1) (West 2022).

U.S. 460, 479-80 (2012), and *Montgomery v. Louisiana*, 136 S. Ct. 718, 735-36 (2016). "[T]he United States Supreme Court has advised that 'children are constitutionally different from adults for purposes of sentencing.' " *People v. Lusby*, 2020 IL 124046, ¶ 32 (quoting *Miller*, 567 U.S. at 471). "The Court outlawed capital sentences for juveniles who commit murder in *Roper* and capital sentences for juveniles who commit nonhomicide offenses in *Graham*. And in *Miller*, the Court barred mandatory life sentences for juveniles who commit murder." *Id. Miller* has since been held to apply retroactively. *Montgomery*, 136 S. Ct. at 735-36; see also *People v. Holman*, 2017 IL 120655, ¶ 38 (recognizing that *Miller* applied retroactively).

¶ 33    Since *Miller*, the Illinois Supreme Court has suggested similar sentencing challenges are viable for youthful offenders, *i.e.*, defendants who are young, but legal adults. See *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44 (finding that a 19-year-old defendant was not necessarily foreclosed from raising an as-applied challenge in the trial court and observing that the Act was designed to resolve such constitutional claims); *People v. Harris*, 2018 IL 121932, ¶ 48 (concluding that the 18-year-old defendant's as-applied proportionate penalties challenge was "more appropriately raised" in a postconviction proceeding rather than on direct appeal).

¶ 34    Defendant attempts to differentiate his claim based on the 2021 HCA amendment from a general *Miller*-based claim. According to defendant, he is not contending that the HCA violates the proportionate penalties clause because the sentencing court was precluded from considering his youth and rehabilitative potential, but rather, that the 2021 amendment was part of a sweeping criminal justice reform that reflects a shift in society's evolving understanding of youth and brain immaturity. He maintains that until the HCA was amended in 2021, his "claim was legally and factually precluded by both the language of the [HCA] and precedent, and he had no

basis upon which he could assert that his life sentence, based on a prior offense committed before he was 21 years old, shocks the moral sense of the people."

¶ 35    " '[A] rule is "novel," and therefore [is] cause for a procedural default, only if the petitioner did not have the legal tools to construct the claim before the rule was issued.' " *Haines*, 2021 IL App (4th) 190612, ¶ 44 (quoting *Waldrop v. Jones*, 77 F.3d 1308, 1315 (11th Cir. 1996)). "The lack of precedent for a position differs from 'cause' for failing to raise an issue, and a defendant must raise the issue, even when the law is against him, in order to preserve it for review." *People v. Guerrero*, 2012 IL 112020, ¶ 20.

¶ 36    The reason defendant seeks to avoid basing his claim on *Miller* and its progeny is because Illinois courts have consistently held that *Miller* and other age-related claims do not constitute cause because our courts have long recognized the differences between juvenile and young adult offenders. See *People v. Dorsey*, 2021 IL 123016, ¶74; *People v. Clark*, 2023 IL 127273, ¶¶ 92-94; *People v. Moore*, 2023 IL 126461, ¶ 42.

¶ 37    In *Dorsey*, a juvenile offender sought leave to file a successive postconviction petition, challenging his 76-year aggregate prison sentence based on *Miller*. The *Dorsey* court held "that *Miller*'s announcement of a new substantive rule under the eighth amendment [did] not provide cause for [the] defendant to raise a claim under the proportionate penalties clause." *Dorsey*, 2021 Il 123016, ¶ 74. "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing. Thus, *Miller*'s unavailability prior to 2012 at best deprived defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' " *Id.*

¶ 38    Following *Dorsey*, Illinois courts have continued to hold that sentencing claims based on

youth are not novel and do not support a finding of cause. In *Clark*, the supreme court considered the proportionate penalties claim of a 24-year-old defendant suffering from mental health issues. *Clark*, 2023 IL 127273, ¶ 1. Applying the cause-and-prejudice test, the supreme court found that the defendant could not establish cause because case law was clear that the new rule set forth in *Miller* " 'does not provide cause for a defendant to raise a claim under the proportionate penalties clause' in a successive postconviction petition." *Id.* ¶ 92 (quoting *Dorsey*, 2021 IL 123010, ¶ 74). In applying *Dorsey* to young adult offenders, the *Clark* court observed that "Illinois courts were also aware that 'less than mature age can extend into young adulthood—and they have insisted that sentences take into account that reality of human development.' " *Id.* ¶ 93 (quoting *Haines*, 2021 IL App (4th) 190612, ¶ 47). The court found that the defendant " 'had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause' when he filed his previous postconviction petitions." *Id.* (quoting *Haines*, 2021 IL App (4th) 190612, ¶ 49). The supreme court concluded that, "citing the *Miller* line of cases does not satisfy the 'cause' prong of the cause-and-prejudice test for raising a proportionate penalties claim in a successive postconviction petition, as *Miller*'s unavailability does nothing to explain why defendant neglected to raise the proportionate penalties clause claim in his prior postconviction proceedings." *Id.* ¶ 94; see *Moore*, 2023 IL 126461, ¶ 42 ("As *Miller* did not change the law applicable to young adults, it does not provide cause for the proportionate penalties challenges advanced in [the defendants'] proposed successive postconviction petitions.").

¶ 39     By contending that his claim is premised on the 2021 amendment to the HCA and not *Miller*, defendant aims to avoid the foreclosure of his claim by *Dorsey* and *Clark*. However, his argument is a distinction without a difference. Defendant concedes that the amendment is not

retroactive and therefore he is not seeking relief by being resentenced under these changes. But if the 2021 amendment does not apply to him, then what is the basis of his proportionate penalties claim. We find his claims fall under *Miller* because he is using its reasoning to demonstrate the evolving standards of sentencing for young adult offenders. By suggesting his claims are not based on *Miller*, defendant tries to get the benefit of the retroactive amendment which he concedes does not apply to him.

¶ 40     We find the decisions in *People v. Lawson*, 2015 IL App (1st) 120751, *People v. Simmons*, 2023 IL App (4th) 220693-U, and *People v. Byrd*, 2023 IL App (4th) 220957-U, relevant to our analysis. In *Lawson*, the defendant argued on direct appeal, in part, that his natural life sentence pursuant to the HCA was unconstitutional as applied to him because one of the predicate convictions occurred when he was 17 years old. *Lawson*, 2015 IL App (1st) 120751, ¶ 44. The reviewing court observed that in enacting mandatory life sentences under the HCA, the legislature considered the rehabilitative potential of offenders by limiting the application of this statute to offenders who have a third serious felony conviction within a prescribed period of time, and that offenders have the opportunity to present mitigating evidence and demonstrate their rehabilitative potential when they are sentenced for their first two serious felony offenses. The HCA is only imposed after defendant has twice shown that conviction and imprisonment do not deter him from a life of crime. *Id.* ¶ 52. The *Lawson* court then concluded that defendant was not a juvenile when he committed his third Class X felony and was being punished for that offense. *Id.* ¶ 53.

¶ 41     In *Simmons*, the Fourth District recently considered the same issue before us. There, the defendant was convicted of armed robbery in 1997. *Simmons*, 2023 IL App (4th) 220693-U, ¶ 4.

Because the defendant had two prior Class X convictions, the State sought a natural life sentence under the HCA. *Id*. ¶¶ 5- 6. In July 2022, the defendant sought leave to file a successive postconviction petition and argued that his life sentence violated the proportionate penalties clause because under current Illinois law, he could not be found to be an habitual criminal. He noted that his first two convictions occurred when he was 16 and 20 years old. *Id*. ¶ 10. As defendant in this case asserts, the defendant in *Simmons* alleged in his petition that "he could not have raised his sentencing challenge in either of his previous postconviction proceedings as the legislature did not amend the [HCA] to exclude crimes committed by persons under the age of 21 until many years after those proceedings were concluded." *Id*. ¶ 11. The trial court found that the defendant failed to satisfy the cause and prejudice test and denied him leave to file his successive petition. *Id*. ¶ 12.

¶ 42     On appeal, the defendant argued that his life sentence under the HCA violated the proportionate penalties clause "because (1) the current version of the [HCA] requires qualifying felony offenses to have been committed when the defendant was 21 years of age or older and (2) he was under the age of 21 when he committed his predicate felony offenses." *Id*. ¶ 15. He maintained that he satisfied the requisite cause because the 2021 amendment took effect after the filing of his previous postconviction petition. *Id*. Specifically, he argued that the 2021 amendment reflected society's evolving understanding of youth and brain immaturity as well as its impact on rehabilitation. He further asserted that "this evolving understanding of youth represents objective evidence that his life sentence—based in part upon offenses he committed when he was under the age of 21—is shocking to the moral sense of the community" and prior to the amendment, his claim was legally and factually precluded. *Id*. ¶ 24.

¶ 43    The reviewing court disagreed and found that the "defendant had the essential legal tools with which to construct his proportionate penalties claim prior to the 2021 amendment to the [HCA], including at the time of his previous postconviction proceedings." *Id.* ¶ 25. The *Simmons* court relied on the decisions in *Haines*, 2021 IL App (4th) 190612, and *People v. Kuehner*, 2022 IL App (4th) 200325, for support.

¶ 44    In *Haines*, the defendant sought leave to file a successive postconviction petition challenging his 55 year sentence for a first degree murder he committed when he was 18 in violation of the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution based on *Miller* and *Harris*. *Haines*, 2021 IL App (4th) 190612, ¶ 1. The Fourth District found that years prior to the defendant's previous postconviction petition, "Illinois courts recognized as-applied claims under the proportionate-penalties clause." *Id.* ¶ 46. Further, the *Haines* court observed that "decades before *Harris*, Illinois case law held that the proportionate-penalties clause required the sentencing court to take into account the defendant's 'youth' and 'mentality.' " *Id.* ¶ 47. The reviewing court concluded that the defendant "had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause" when he filed his prior postconviction petition and found that the defendant had not satisfied the cause prong of the cause and prejudice test. *Id.* ¶ 49. The *Haines* court further reasoned:

> "To be sure, *Harris*, issued some 10 years after the initial postconviction proceeding, would have made it easier for defendant to raise his claim. But, again, the question is not whether subsequent legal developments have made it easier to raise the claim. Rather, the question is whether, at the time of the initial

postconviction proceeding, Illinois law provided the tools with which to raise the claim. Despite the nonexistence of *Harris*, the legal basis of defendant's present proposed claim was reasonably available at the time of the initial postconviction proceeding." (Internal citations omitted.) *Id.*

¶ 45     In *Kuehner*, the defendant entered an open plea for attempted first degree murder and home invasion, committed when he was 17 years old, and received a sentence of 35 years. He sought leave to file a successive postconviction petition alleging, in part, that his sentence violated the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. *Kuehner*, 2022 IL App (4th) 200325, ¶¶ 1,4. The defendant argued that he established cause because the authority on which he based his sentencing claim was not previously available to him and pointed to legislative changes in Illinois in 2014, 2016, and 2019 that he contended demonstrate a societal shift toward more lenient treatment of juvenile offenders. *Id.* ¶ 100.

¶ 46     The *Kuehner* court followed the reasoning in *Haines* and found that the defendant could not show cause because he was not prevented from challenging his sentence in a previous postconviction petition.

> " Similarly, in this case, defendant had the necessary tools to construct an as-applied, proportionate penalties claim when he filed his (1) direct appeal in 2005, (2) initial postconviction petition in 2009, and (3) amended postconviction petition in 2018. The statutory amendments in 2014, 2016, and 2019 would have made it easier for him to prove his claim, but he was not foreclosed from bringing that claim earlier." *Id.* ¶ 106.

¶ 47    Following *Haines* and *Kuehner*, the *Simmons* court likewise held that the defendant was not prevented from raising a proportionate penalties claim in his prior postconviction petition. *Simmons*, 2023 IL App (4th) 220693-U, ¶ 31. The defendant "had the ability to construct his proportionate penalties claim at the time of his earlier postconviction proceedings. Neither the unavailability of *Miller* nor the 2021 amendment to the [HCA] provides 'cause' for his failure to previously raise that claim." *Id.* The court found the defendant's attempt to characterize his claim based on the 2021 amendment as a novel issue "unconvincing." *Id.* ¶¶ 32-33. "[T]he fact that developmental differences exist between youthful offenders and offenders who are mature adults, and that such differences are relevant to sentencing considerations, are not novel concepts under Illinois law." *Id.* ¶ 33.

¶ 48    Similarly, in *Byrd*, 2023 IL App (4th) 220957-U, ¶ 2, the defendant also sought leave to file a successive postconviction petition, arguing that his natural life sentence imposed under the HCA violated the proportionate penalties clause. The defendant asserted that one of his predicate offenses occurred when he was under 21 years of age. On appeal, the defendant argued that the reviewing court should revisit *Simmons* because its reliance on *Kuehner* was misplaced. *Id.* ¶ 21. The *Byrd* court found *Simmons* persuasive and concluded that "[a]t best, the 2021 amendment provides an example of the societal shift toward more lenient sentencing of youthful offenders that would have made it easier to prove his claim. We agree with the analysis in *Simmons*—the amendment is not novel." *Id.* ¶ 23.

¶ 49    We find these cases persuasive and their analysis applicable in this case. While *Lawson* did not involve, and predated, the 2021 amendment, we find its conclusion that the life sentence imposed under the HCA is punishment for the third Class X felony offense is equally true in this

case. Defendant was a 29-year-old when he committed his third armed robbery and that conviction triggered the applicability of the HCA.

¶ 50   We further note that the legislature chose not to make the 2021 amendment retroactive and we are bound by the statutory language. "It is the judiciary's role to enforce clear, unambiguous statutes as written, not to question the wisdom of the legislature." *People v. Wells*, 2023 IL 127169, ¶ 31. " 'The legislature has the power to prescribe penalties for defined offenses, and that power necessarily includes the authority to prescribe mandatory sentences, even if such sentences restrict the judiciary's discretion in imposing sentences.' " *People v. Hilliard*, 2023 IL 128186, ¶ 21 (quoting *People v. Huddleston*, 212 Ill. 2d 107, 129 (2004)). "The legislature's determination of a particular punishment for a crime in and of itself is an expression of the general moral ideas of the people." *Id.* ¶ 38.

¶ 51   In *Hilliard*, the supreme court considered a similar argument involving the mandatory firearm enhancement. There, the defendant was convicted of attempted first degree murder and received the mandatory 25-year firearm enhancement, for a total sentence of 40 years. *Id*. ¶ 9. In a postconviction petition, the defendant contended that his sentence was unconstitutional because he was 18 years old at the time of the offense and the mandatory nature of the firearm enhancement deprived the trial court of the ability to consider his age and lack of criminal history. *Id.* ¶ 11. The defendant argued that following a 2016 amendment, Illinois courts have the statutory discretion to choose whether to impose the firearm enhancement on defendants who were juveniles at the time of the offense. *Id.* ¶ 36 (citing 730 ILCS 5/5-4.5-105(b) (West 2022)). The supreme court concluded that the legislative changes did not support the defendant's as-applied challenge. "The legislature determined that courts should have the discretion to

determine whether to impose the firearm enhancement on individuals who were juveniles when they committed their crimes (730 ILCS 5/5-4.5-105(b) (West 2022)), but the provision is not retroactive." *Id.* ¶ 38. The *Hilliard* court further observed that the legislature made the "deliberate choice" not to extend the discretion to adult offenders. *Id.* "The legislature's decision not to broaden the statute's reach to *all* defendants under 21 shows that it was implementing the legislation as a policy change rather than a reflection that the previous statutory scheme was abhorrent to the community's moral sense." (Emphasis in original.) *Id.* ¶ 38.

¶ 52    Similarly, here, the legislature decided in enacting the 2021 amendment to the HCA not to broaden the scope for retroactive application. As the *Hilliard* court reasoned, this legislative choice was "a policy change" rather than an indication that life sentences imposed under the previous versions were against the "community's moral sense."

¶ 53    After reviewing all the relevant authority, we find that defendant has not shown the requisite cause to overcome the bar of *res judicata*. As the *Clark* court observed, defendant had "the essential legal tools" to raise his current sentencing claim when he filed his previous postconviction petitions. See *Clark*, 2023 IL 127273, ¶ 93. In fact, defendant previously raised a proportionate penalties challenge of his sentence under a different argument based on *Miller* in his fourth successive petition. Thus, defendant was aware of the evolving standards relating to juvenile and young adult offenders and he cannot overcome the bar of *res judicata*.

¶ 54    Since our ruling on cause disposes of the case, we need not address the issue of whether defendant adequately stated a *prima facie* showing of prejudice. *People v. Moore*, 2023 IL 126461, ¶ 42.

¶ 55    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook

County.

¶ 56    Affirmed.