2023 IL App (1st) 220418-U

FIFTH DIVISION

February 17, 2023

No. 1-22-0418

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 02 CR 19509 |
| ELLIOTT A. MONTES, | ) ) | Honorable James M. Obbish, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

**ORDER**

¶ 1   *Held:*   We affirm the circuit court's denial of defendant's petition for leave to file a successive postconviction petition because he could not establish cause for not previously raising his sentencing claim.

¶ 2   Defendant Elliott A. Montes appeals from the circuit court's denial of his petition for leave

to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et*

*seq.* (West 2020)), arguing that he established cause and prejudice for not including his sentencing claim in his initial postconviction petition. We affirm.

¶ 3                                    BACKGROUND

¶ 4    After a jury trial, defendant was found guilty of the first degree murder of victim Freddy Paredes, and aggravated battery with a firearm and attempt murder of victim Daniel Cueto. This court recounted the underlying facts of defendant's case in *People v. Montes*, 2016 IL App (1st) 141145-U. In short, at trial, eyewitnesses for the State, including Cueto and two of his brothers, testified that on July 10, 2002, defendant shot Paredes and Cueto following a dispute over an automobile. Defendant testified that he acted in self-defense.

¶ 5    The matter proceeded to sentencing. Defendant's presentence investigation report (PSI) relayed that he was a member of the Satan Disciple gang. He had a juvenile adjudication in 1995 for multiple charges, including robbery, aggravated battery, and aggravated discharge of a firearm. Additionally, he had multiple pending charges. Defendant reported that his mother's boyfriend killed her when defendant was three years old. His aunt raised him from the ages of 3 to about 10 or 11. During that time, both his aunt and her boyfriend abused defendant. He dropped out of school in 7th grade, and lived "on the streets" for a time. He had a limited work history, and supported himself by selling drugs. Defendant denied mental health issues, but admitted to using alcohol and marijuana, and reported that alcohol was involved in his arrests.

¶ 6    At the sentencing hearing, the State presented testimony relating to multiple pending charges for attempt aggravated arson, each of which occurred while defendant was incarcerated, as well as evidence regarding defendant's pending charges for aggravated battery of a correctional officer. Paredes's brother Faustino also testified that on May 20, 2004, defendant, while being escorted out of the courtroom after his trial, raised his middle finger in Faustino's direction.

¶ 7     The State corrected defendant's PSI to include a conviction for attempt murder in case No. 96 CR 30369, and introduced victim impact statements from Cueto and Paredes's mother Gregoria. In mitigation, defense counsel stated that defendant "grew up in a situation that was very difficult for most people," and asked for the minimum sentence. In allocution, defendant, stated in relevant part, "I can't change what happened. If I could, it would be the clip," and, "F*** this s***."

¶ 8     In imposing sentence, the court stated, "I have considered all the matters set forth in the Pre-Sentence Investigation, the witnesses that testified, the Defendant's age, [and] his rehabilitative potential." The court sentenced defendant to a total of 105 years' imprisonment: 50 years for first degree murder, along with a 25-year mandatory consecutive sentence for discharging a firearm, for a total of 75 years; a consecutive 30-year sentence for attempt first degree murder; and another 30-year sentence for aggravated battery with a firearm, to run concurrently with the attempt murder sentence.

¶ 9     On direct appeal, defendant claimed prosecutorial misconduct, ineffective assistance of counsel, an evidentiary error, a violation of the one-act, one-crime rule, and an issue with his time credit. He did not challenge his sentence. This court vacated his conviction for aggravated battery with a firearm, but otherwise affirmed. *People v. Montes*, No. 1-05-0408 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 10     On November 25, 2013, defendant filed a *pro se* postconviction petition, alleging evidentiary errors, prosecutorial misconduct, and multiple theories of ineffective assistance of counsel. Again, defendant did not challenge his sentence. The circuit court summarily dismissed the petition, and this court affirmed on appeal. *Montes*, 2016 IL App (1st) 141145-U.

¶ 11     On March 3, 2021, defendant filed the *pro se* petition for leave to file the successive postconviction petition at issue here. He claimed that his 105-year sentence was an

unconstitutional *de facto* life sentence because at the time of his offense, his brain development was more akin to that of a juvenile than of an adult, and he could demonstrate cause and prejudice for not raising this claim earlier. Regarding cause, defendant argued his claim was "based on newly discovered evidence on brain development and studies conducted since the supreme court decision[s] in [*Roper v. Simmons*, 543 US 551 (2005) and *Miller v. Alabama*, 567 US 460 (2012)]." Respecting prejudice, defendant alleged that his brain development was more akin to a juvenile's at the time of his offense based on a number of factors, including that he: (1) watched someone murder his mother when he was three years old; (2) lived with his aunt following his mother's death, and was "subjected to physical, verbal, and sexual abuse" at that time; (3) lived "on the streets" starting at 10 years old, and soon thereafter joined a gang and "began smoking marijuana, taking PCP, and drinking alcohol"; and (4) was abused by other inmates during periods of incarceration from the ages of 14 to 21.

¶ 12    On February 17, 2022, the circuit court entered an order denying the petition, finding it did not satisfy the elements of a *Miller* claim because defendant was over 21 years old at the time of his offense, and the circumstances as alleged were not sufficiently similar to the defendant's in *People v. Savage*, 2020 IL App (1st) 173135. The court found that defendant's sentencing hearing complied with the requirements the Illinois Supreme Court described in *People v. Holman*, 2017 IL 120655. This appeal followed.

¶ 13                                    ANALYSIS

¶ 14    On appeal, defendant claims that the circuit court erred by denying him to leave to file his successive postconviction petition because he established cause and prejudice for his sentencing claim.

4

¶ 15    The Act provides a mechanism for a criminal defendant to challenge his conviction on the grounds that it violates his federal or state constitutional rights, or both. *People v. Dorsey*, 2021 IL 123010, ¶ 31. A defendant may only file one petition as of right. 725 ILCS 5/122-1(f) (West 2020). Before filing a successive petition, a defendant must receive leave of court. *Id.* Unless the defendant claims actual innocence, the circuit court should only grant a defendant leave to file a claim in a successive postconviction petition if he establishes cause for not raising the claim earlier, and prejudice should he not be permitted to pursue the claim. *People v. Robinson*, 2020 IL 123849, ¶ 42. To show cause, the defendant must demonstrate that an "objective factor" prevented him from raising the claim earlier. *Dorsey*, 2021 IL 123010, ¶ 32. If the defendant cannot establish one prong of the cause and prejudice test, the reviewing court may deny leave on that basis alone, and need not analyze the other prong. See *People v. Smith*, 2014 IL 115946, ¶ 37. We review the circuit court's denial of leave to file a successive postconviction petition *de novo*, and may affirm on any basis supported by the record, regardless of the reasoning used below. *Dorsey*, 2021 IL 123010, ¶ 33; *People v. Horton*, 2021 IL App (1st) 180551, ¶ 42.

¶ 16    Defendant claims that his 105-year sentence is an unconstitutional *de facto* life sentence pursuant to the sentencing protections the United States Supreme Court announced in *Miller*, as extended by our supreme court's findings in *People v. Harris*, 2018 IL 121932, and *People v. Buffer*, 2019 IL 122327. In *Miller*, the United States Supreme Court held that mandatory life sentences without the possibility of parole for juvenile offenders violated the eighth amendment to the United States Constitution. *Miller*, 567 U.S. at 479. In *Harris*, the Illinois Supreme Court explained that while *Miller* itself applied only to juveniles, its reasoning could be applied to young adult defendants (those older than 18 years old at the time of their offense) through a claim pursuant to the Illinois Constitution's proportionate penalties clause, provided that the defendant

can establish that his brain development was more akin to that of a juvenile at the time of the offense. *Harris*, 2018 IL 121932, ¶¶ 34-48. Finally, in *Buffer*, the Illinois Supreme Court found that a "prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment," opening the door for claims that a sentence of over 40 years constitutes a *de facto* life sentence. *Buffer*, 2019 IL 122327, ¶ 41.

¶ 17    Defendant argues that he can establish cause for not raising his claim earlier because he filed his initial postconviction petition in 2013, only shortly after the United States Supreme Court issued *Miller*, and well before the Illinois Supreme Court decided *Harris* and *Buffer*. Thus, according to defendant, he could not have argued the as-applied proportionate penalties clause claim pursuant to those cases in his initial petition.

¶ 18    The State responds that this argument is precluded by the Illinois Supreme Court's statements in *Dorsey*. There, in the context of a petition for leave to file a successive petition filed by a 14-year-old defendant, the Illinois Supreme Court stated that, "we find that *Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause [for purposes of a petition for leave to file a successive postconviction petition] for a defendant to raise a claim under the proportionate penalties clause," reasoning that "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing." *Dorsey*, 2021 IL 123010, ¶ 74. Subsequently, reviewing courts have generally applied *Dorsey* to find young adult defendants could not rely on the unavailability of the *Miller*/*Harris* framework at the time of their initial postconviction petitions to establish cause for purposes of obtaining leave to file a successive petition. See *Walker*, 2022 IL App (1st) 201151, ¶ 30.

¶ 19    Based on *Dorsey* and its progeny, we find that defendant here has not established cause for not previously raising his sentencing claim, and thus the circuit court was correct to deny him leave to file his successive postconviction petition. *Dorsey* explicitly rejected the idea that *Miller* created a new theory, previously unavailable to defendants, such that a defendant could now establish cause because the theory did not yet exist at the time of his previous filings. *Dorsey*, 2021 IL 123010, ¶ 74. Instead, the *Dorsey* court found that *Miller* merely provided helpful support for a claim that a defendant's sentence violated the proportionate penalties clause because the court did not adequately consider the defendant's youth. *Id.* Such a claim was part of Illinois jurisprudence well before *Miller*, including both in the context of juvenile defendants (see *Dorsey*, 2021 IL 123010, ¶ 74) and young adult defendants (see *People v. French*, 2022 IL App (1st) 220122, ¶ 30). The same reasoning applies where, as here, a defendant argues that new research and scholarship regarding brain development was published after his initial opportunity to challenge his sentence; again, these resources, like the *Miller* case itself and its progeny, only provide helpful support for a sentencing challenge, and do not provide a new claim such that a defendant can be excused for not challenging his sentence previously. See *People v. Haines*, 2021 IL App (4th) 190612, ¶ 51. Thus, defendant here presents no viable argument regarding cause, and his petition can be rejected on that basis alone. We note that the court analyzed defendant's claim substantively without reference to whether he established cause, but that is of not dispositive because we may affirm on any basis supported by the record. *Horton*, 2021 IL App (1st) 180551, ¶ 42.

¶ 20    We note that while this case was pending, the Illinois Supreme Court provided direct guidance on the proper interpretation of *Dorsey* in this context. See *People v. Clark*, 2023 IL 127273. In *Clark*, the court rejected a young adult defendant's argument that he could establish cause for not raising his proportionate penalties clause claim earlier because *Miller* and its progeny

were not yet available to him, explaining, "*Miller* does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders." *Clark*, 2023 IL 127273, ¶ 93. The court continued, "Therefore, citing the *Miller* line of cases does not satisfy the "cause" prong of the cause-and-prejudice test for raising a proportionate penalties claim in a successive postconviction petition" for young adult or juvenile defendants. *Id.* ¶¶ 93-94.

¶ 21     Defendant argues that *Dorsey* did not directly overrule cases in which this court found that the fact that a defendant's previous postconviction petition(s) pre-dated the *Miller/Harris* framework provided cause. Defendant further argues that the *Dorsey* court's statements regarding cause should not be read as applying to young adult defendants because there is no long-established tradition that such defendants should be sentenced differently than adult defendants. As explained above, however, the supreme court's unequivocal language in *Clark* invalidates any argument that *Dorsey*'s statements regarding cause did not apply to young adult defendants. See *id.*

¶ 22     Finally, because we find that defendant cannot establish cause, we need not consider whether his petition established prejudice. See *Smith*, 2014 IL 115946, ¶ 37.

¶ 23                                    CONCLUSION

¶ 24     Under *Dorsey* and *Clark*, defendant has failed to demonstrate cause for not earlier raising his sentencing claim. Accordingly, the circuit court was correct to deny him leave to file his successive postconviction petition.

¶ 25     Affirmed.