2025 IL App (1st) 230999-U

FIRST DISTRICT,
SIXTH DIVISION
June 20, 2025

No. 1-23-0999

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | No. 00 CR 09450 01 |
| MAURICE TAYLOR, | ) ) ) | |
| Defendant-Appellant. | ) ) ) | Honorable Carol M. Howard, Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1      *Held*:  We affirm the trial court's denial of defendant's motion for leave to file a successive postconviction petition where he failed to establish cause for failing to bring his proportionate penalties claim in his initial petition.

¶ 2      Defendant Maurice Taylor appeals the trial court's denial of his motion for leave to file a successive postconviction petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, Taylor argues he made a *prima facie* showing of cause and

prejudice for his proportionate penalties claim, challenging his aggregate 70-year sentence for offenses he committed at the age of 22. We affirm.

¶ 3                                    BACKGROUND

¶ 4        On February 13, 2000, Taylor and six codefendants lured Frederick Jamison, his brother Roderick Jamison, and four others to an automobile alarm shop under the guise of selling them 40 pounds of marijuana. The plan was to rob the men at gunpoint of the large sum of money intended for the drug transaction. Frederick was fatally shot during the commission of the crime. Taylor was tried for first degree murder (720 ILCS 5/9-1 (West 1992)), aggravated vehicular hijacking (720 ILCS 5/8-14(a)(4) (West 1992)), and six counts of armed robbery (720 ILCS 5/18-(A)(2) (West 1992). The jury found Taylor guilty of first degree murder and that he personally discharged a firearm during the commission of the murder. He was also found guilty of aggravated vehicular hijacking but was acquitted of all armed robbery counts.

¶ 5        The evidence at trial showed that around 7:00 or 8:00 p.m. on February 13, 2000, Frederick, Roderick, Corey Brown, Antoine Stevenson, Leroy Presley, and John Smith went to an automobile alarm shop located near Cermak Road and Ashland Avenue to purchase 40 pounds of marijuana for $28,000. They arrived in two separate vehicles, one of which was Frederick's white Ford Expedition. Frederick backed the Ford Expedition into the open garage of the shop when they arrived.

¶ 6        They waited in the garage for about 45 minutes to an hour until a Hispanic male with long hair entered, took a laundry bag into the back office, and left. Shortly thereafter, the Hispanic male returned with four armed men, including Taylor. The armed men yelled, "Freeze, police" and demanded Frederick, Roderick, and their friends lay on the ground. Taylor and his codefendants beat them, searched their pockets, took their jewelry, and demanded the money

meant for the drug transaction. After being told the money was in the truck, one of Taylor's codefendants drove off in the Ford Expedition and did not return. Taylor and the remaining codefendants told the victims to line up against a wall. As Taylor and the others started backing out of the garage, the lights went out, and three shots were fired. One shot hit Frederick, killing him.

¶ 7 Roderick, Brown, Stevenson, Presley, and Smith all identified Taylor as one of the armed men in physical lineups in the days following the shooting and at trial. Roderick and Presley testified they could still see inside the garage after the lights went out and saw Taylor and codefendant Alvin Harris fire their guns in the direction of the victims.

¶ 8 The State introduced Taylor's handwritten statement admitting he agreed to his friend's plan to rob a group of men expecting to buy a large amount of marijuana. Taylor stated he held the men at gunpoint, searched them for weapons, took a diamond stud earring, demanded money, and fired his gun at a wall in the garage. Shortly thereafter, he met with his codefendants to get his share of the money. He received $1,000 in cash, which he used to buy jewelry and clothing the next day. The jury found Taylor guilty of first degree murder and that he personally discharged a firearm during the commission of the offense. Taylor was also found guilty of aggravated vehicular hijacking but was acquitted of all armed robbery counts.

¶ 9 The presentence investigation report (PSI) reflects that Taylor was 22 years old at the time of the offense and was a member of the Gangster Disciples from ages 13 to 21. The PSI outlines Taylor's extensive juvenile and adult criminal history spanning from 1990 to 1998, including findings of delinquency for aggravated battery, residential burglary, criminal damage to property, possession of a stolen vehicle, and residential burglary, and convictions for

obstructing prosecution, theft, possession of cannabis, unlawful trespass to a vehicle, unlawful use of a firearm by a felon, and possession of a stolen vehicle.

¶ 10    At Taylor's September 16, 2003 sentencing hearing, clinical licensed social worker Lisa Rickert and neuropsychologist Robert Hanlon testified in mitigation. Rickert explained that despite growing up in a two-parent household, Taylor did not have much supervision, which allowed him to become gang-involved. Taylor's parents received social security benefits from 1992 to 1996 due to Taylor's diagnosis of "mental retardation." Taylor had difficulty in school, received only minimal special education services despite his diagnosis, and received only an eighth-grade education. Dr. Hanlon diagnosed Taylor with "borderline mental retardation." He explained that Taylor has an I.Q. of 76, processes information very slowly, "does not have much capacity to learn from mistakes," and "react[s] impulsively without forethought and without consideration for the repercussions of his actions." Defense counsel argued for a lesser sentence, in part, since Taylor's intellectual disability prevents him from making "rational adult decisions."

¶ 11    In imposing sentence, the trial court considered all factors in aggravation and mitigation, including Taylor's substantial criminal background "for somebody who *** just turned 22 at the time of the offense." The court also considered Taylor's intellectual disability and Dr. Hanlon's testimony that Taylor does not learn from his mistakes, which reflects both his mental state and propensity to commit crime. The trial court sentenced Taylor to 40 years' imprisonment for first degree murder, an additional 20-year mandatory firearm enhancement, and a consecutive 10-year sentence for aggravated vehicular hijacking.

¶ 12    On October 9, 2003, Taylor filed a motion to reconsider sentence, raising violations of equal protection, protection from cruel and unusual punishments, "proportionality in sentencing and the right to have his sentence reflect his rehabilitative potential," and challenging the

mandatory firearm enhancement as unconstitutional. The trial court denied the motion. Taylor appealed, challenging only the mandatory firearm enhancement. We affirmed. *People v. Taylor*, 357 Ill. App. 3d 1088 (table) (2005) (unpublished order under Supreme Court Rule 23).

¶ 13        On December 15, 2005, Taylor filed a *pro se* petition for postconviction relief, arguing his indictment was void because he was arrested without warrant or probable cause, he was coerced into giving a false confession, key elements of the jury instructions were omitted, and that his sentence violates the one-act-one-crime rule. The trial court summarily dismissed the petition. We affirmed. *People v. Taylor*, 373 Ill. App. 3d 1154 (table) (2007) (unpublished order under Supreme Court Rule 23).

¶ 14        On May 14, 2021, Taylor sought leave to file a successive postconviction petition, arguing his *de facto* life sentence is unconstitutional under the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution because he was only 22 years old at the time of the offense and intellectually disabled. Taylor maintained he had cause for failing to bring his claims sooner because *Miller v. Alabama,* 567 U.S. 460 (2012) and the "supporting authority" he relies on were not available when he filed his initial postconviction petition in 2005.

¶ 15        In support of his petition, defendant attached (1) Dr. James Garbarino's June 14, 2019 report, "Scientific Rationale to Extend the *Graham/Roper/Miller* protections upward from age 18 to 25," (2) a 2009 Stanford Technology Law Review article, "Brain Imaging for Legal Thinkers: A Guide for the Perplexed," (3) a 2016 report by Yotam Zeira and Molly Baldwin, "Pioneers in Young Adult Justice: 10 Initiatives and Programs Improving Criminal Justice for Young Adults," (4) a 2015 report published by the Juvenile Justice Initiative, "Young Adults in Conflict with the Law: Opportunities for Diversion," (5) a 2016 Newsweek Magazine article,

"Neuroscience is Changing the Debate over What Role Age Should Play in the Courts," (6) and a 2008 study entitled "Personality Trait Change in Adulthood."

¶ 16     The trial court denied Taylor leave to file, finding he failed to make a *prima facie* showing of cause and prejudice as to each of his claims. Taylor appeals.

¶ 17                                        ANALYSIS

¶ 18     On appeal, Taylor challenges the denial of leave to file only as to his proportionate penalties claim, arguing he made a *prima facie* showing of cause and prejudice. Following our supreme court's decisions in *People v. Dorsey*, 2021 IL 123010, *People v. Clark*, 2023 IL 1272273, and *People v. Moore*, 2023 IL 126461, Taylor cannot establish cause for failing to bring his proportionate penalties claim in his initial postconviction petition.

¶ 19     The Act provides a remedy to criminal defendants whose federal or state constitutional rights were substantially violated at trial or sentencing. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). The Act contemplates the filing of only one petition without leave of court, and any claim not raised in the initial petition is waived. 725 ILCS 5/122-3 (West 2020). Although successive petitions for postconviction relief are "highly disfavored," leave of court may be granted if defendant makes a *prima facie* showing of both "cause" and "prejudice." *People v. Bailey*, 2017 IL 121450, ¶¶ 24, 39; 725 ILCS 5/122-1(f) (West 2020). "Cause" is "an objective factor that impeded [defendant's] *** ability to raise a specific claim during his *** initial post-conviction proceedings." 725 ILCS 5/122-1(f). "Prejudice" is established where "the claim not raised *** so infected the trial that the resulting conviction or sentence violated due process." *Id.* We review the denial of defendant's motion for leave to file a successive postconviction petition *de novo*. *Id.* ¶ 13.

¶ 20		The proportionate penalties clause provides, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Taylor's proportionate penalties claim is premised in part on *Miller*'s holding that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " *Miller*, 567 U.S. at 465. This applies to life as well as *de facto* life sentences, *i.e.*, those over 40 years' imprisonment. *People v. Buffer*, 2019 IL 122327, ¶ 41. Although *Miller* only applies to those under the age of 18 (*People v. Harris*, 2018 IL 121932, ¶ 58), "[b]y way of the proportionate penalties clause *** young adults may rely on the evolving neuroscience and societal standards underlying the rule in *Miller* to support an as-applied challenge to a life sentence" under the Act. *People v. Walker*, 2022 IL App (1st) 201151, ¶ 27; see *People v. Thompson*, 2015 IL 118151, ¶ 44; *Harris*, 2018 IL 121932, ¶ 48.

¶ 21		However, our supreme court has considerably limited the ability of defendants to raise youth-based challenges to their sentences under the proportionate clause in successive postconviction proceedings. See *Clark*, 2023 IL 127273, ¶ 88 (noting that *Thompson* and *Harris* addressed the possibility of defendants raising *Miller*-based challenges to *mandatory* life sentences in *initial* postconviction petitions). In *Dorsey*, 2021 IL 123010, ¶ 74, the court held that since "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing," *Miller*'s prior unavailability at best deprived juvenile defendants of " 'some helpful support' " for proportionate penalties claims, which is insufficient to establish cause. *Id.*

¶ 22		The court applied the same reasoning to young-adult offenders in *Clark* and *Moore*, recognizing that "Illinois courts were also aware that 'less than mature age can extend into young

adulthood—and they have insisted that sentences take into account that reality of human development.' " *Clark*, 2023 IL 127273, ¶ 93 (quoting *People v. Haines*, 2021 IL App (4th) 190612, ¶ 47); see also *People v. Moore*, 2023 IL 126461, ¶ 42 (since "*Miller* did not change the law applicable to young adults, it does not provide cause" for proportionate penalties challenges advanced by young-adult offenders). It therefore follows that Taylor cannot rely on the prior unavailability of *Miller* and its progeny to establish cause. See *Clark*, 2023 IL 127273, ¶¶ 93-94.

¶ 23        Taylor attempts to circumvent our supreme court's precedent, arguing he is not relying solely on the unavailability of *Miller*, but rather, the lack of factual and evidentiary support for his claim. This makes no difference. Even before Taylor filed his initial postconviction petition in 2005, "it was already accepted in Illinois law *** that there was a significant developmental difference not only between minors and adults but also between young adults and older adults." See *Haines*, 2021 IL App (4th) 190612, ¶ 51; see also *People v. Maldonado*, 240 Ill. App. 3d 470, 485-86 (1992) (reducing sentence of 20-year-old under the proportionate penalties clause); *People v. Center*, 198 Ill. App. 3d 1025, 1035 (1990) (reducing sentence of 23-year-old under the proportionate penalties clause).

¶ 24        Although the articles and studies cited by Taylor provide "some helpful support" for his proportionate penalties claim, Taylor had a legal and factual basis to raise this claim at the time he filed his initial postconviction petition. See *Haines*, 2021 IL App (4th) 190612, ¶ 51 (relying on new young-adult brain science insufficient to establish cause where Illinois law long recognized developmental differences between young-adults and older adults); *People v. Robinson*, 2025 IL App (1st) 231419-U, ¶¶ 59, 63 (same); *People v. Montes*, 2023 IL App (1st) 220418-U, ¶ 19 (same); see also *People v. French*, 2022 IL App (1st) 220122, ¶ 33 (because defendant's claim was "buildable" prior to *Miller*, he had "ample time to summon the

evidentiary support to raise his proportionate penalties claim"); *People v. McGee*, 2025 IL App (1st) 231591-U, ¶ 36 ("[a]lthough defendant may now have the science to back it up ***, [he] could have summoned the facts about his own childhood and experiences and history concerning his upbringing and development").

¶ 25    *People v. Blalock*, 2022 IL 126682, on which Taylor relies, is distinguishable. There, the court held that newly discovered evidence of victim affidavits, official complaints of misconduct, and a torture inquiry database constituted sufficient cause to support defendant's coerced confession claim. *Id.* ¶¶ 40, 44-45. In doing so, the court recognized that such claims require corroborating proof of police misconduct that " 'generally has nothing to do with the facts of the defendant's own case.' " *Id.* ¶ 44 (quoting *People v. Brandon*, 2021 IL App (1st) 172411, ¶ 57-59). Whereas here, Taylor is relying on information that was well-known to him and even introduced in mitigation at his sentencing hearing, *i.e.*, his youth, impulsivity, intellectual disability, and upbringing. As such, Taylor has failed to present an "objective factor" that prevented him from raising his proportionate penalties claim sooner.

¶ 26    Because Taylor has failed to establish cause, we need not address whether he has made the requisite showing of prejudice. See *Moore*, 2023 IL 126461, ¶ 42.

¶ 27                                CONCLUSION

¶ 28    For the foregoing reasons, we affirm the trial court's denial of Taylor's motion for leave to file a successive postconviction petition.

¶ 29    Affirmed.